1  Kenneth J. Catanzarite (SBN 113750)
2  Jim Travis Tice (SBN 153867)
   CATANZARITE LAW CORPORATION
3  2331 West Lincoln Avenue
4  Anaheim, California 92801
   Tel: (714) 520-5544
5  Fax: (714) 520-0680

6
   Counsel for Lead Plaintiffs and the Class
7

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
               **WESTERN DIVISION**
10

11  IN RE ENTROPIN, INC. SECURITIES ) No. CV 04-06180 RC
    LITIGATION )
12  )                                 CLASS ACTION
    )
13  This Document Relates To:        ) DECLARATION OF LAURENCE M.
                                     ) ROSEN IN SUPPORT OF
14      ALL ACTIONS.                 ) SETTLEMENT AND PLAN OF
                                     ) ALLOCATION AND AWARD OF
15                                   ) ATTORNEYS' FEES AND
                                     ) EXPENSES
16                                   )
                                     ) Hearing Information:
17                                   )
                                     ) Date: May 29, 2008
18                                   ) Time: 9:30 a.m.
                                     ) Courtroom: 23
19                                   ) Judge: Hon. Rosalyn M. Chapman

20
         I, Laurence Rosen, declare and state, under penalty of perjury, that the
21
    following is true and correct to the best of my knowledge, information and belief:
22
         1.    I am the managing shareholder of the Rosen Law Firm, P.A.,
23
    Counsel for Plaintiffs ("Plaintiffs' Counsel" or "Counsel") for the Court-
24
    appointed Lead Plaintiffs and Class Representatives, Douglas Moreland, David E.
25
    Lewis, Edwin B. Berrington, David Zallar, and Thomas Murphy  (the "Lead
26
    Plaintiffs" or "Plaintiffs"), in the above-entitled action.   I am duly admitted to
27

28                           1

1  practice before this Court and in the State of California.  I am also admitted to

2  practice in New York, Florida, the District of Columbia, and New Jersey.  I have

3  personal knowledge of the matters set forth herein and, if called upon, I could and

4  would completely testify thereto.

5      2.      I submit this Declaration in support of Lead Plaintiffs' motions for

6  final approval of the class action Settlement and Plan of Allocation, and for an

7  Award of Attorneys' Fees and Expenses.  These motions are filed concurrently

8  herewith.

9      3.      The Stipulation of Settlement (the "Stipulation"), dated September

10  18, 2007, provides for a payment of $4.5 million in cash.  On or about November

11  21, 2007, XL Specialty Insurance Company, insurer for defendant Entropin, Inc.

12  ("Entropin" or the "Company") caused $100,000.00 in cash to be deposited into a

13  Notice and Administration Account to pay for administrative expenses.   At the

14  same time, XL Specialty Insurance Company caused the remaining $4.4 million

15  to be deposited into an interest-bearing Escrow Account, as provided for in the

16  Stipulation.

17      4.      The purpose of this Declaration is to set forth the nature and history

18  of the investigation, extensive discovery, and motion practice, and several

19  mediation sessions that led to the settlement with defendants Entropin, Inc.,

20  Higgins D. Bailey ("Bailey"), the Chairman of Entropin's Board of Directors at

21  all relevant times herein, and Thomas G. Tachovsky, Entropin's CEO, director,

22  and President at all relevant times herein.  This Declaration demonstrates why the

23  Settlement is fair, reasonable, and adequate and should be approved by the Court,

24  why the Plan of Allocation is fair and reasonable, and why Plaintiffs' Counsel's

25  fee and expense request is reasonable and should be approved by the Court.

26

27

28

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
OF SETTLEMENT AND PLAN OF ALLOCATION, AND
AWARD OF ATTORNEYS' FEES  AND EXPENSES
Case No. CV-04-06180-RC

## I.     SUMMARY

5.     Since the filing of this action in July 2004 and the related California Superior Court action in January 2003, Plaintiffs have litigated this Action tenaciously and tirelessly.  The Settlement was reached only after a thorough investigation of the events complained of and the law applicable to Plaintiffs' claims; interviews of numerous witnesses; over thirty depositions; review of over 60,000 pages of documents produced; exhaustive motion practice before three trial courts and an appeals court, which included the filing of three motions to dismiss, four separate motions for summary judgment and three separate amended complaints; successful motions for class certification in both State and Federal courts; a successful appeal before the Court of Appeals of the State of California, Fourth District; and four attempts at arm's-length mediation in as many years that led, after more than five-and-a-half years, to the successful resolution of the Action.  By the time the parties reached the Settlement, each had acquired a full understanding of the strengths and weaknesses of its case.  Even though 5,400 notices of the settlement of this Action were sent to Class Members, and notice was duly published in *The Investors Business Daily* and through *PR Newswire*, not a single Class Member objected to the Settlement, Plan of Allocation, or the request for Attorneys' Fees and Expenses. Nor has any Class Member sought exclusion.  *See* Affidavit of Paul Mulholland dated May 8, 2008, ¶18 submitted herewith ("Mulholland Aff.").

6.     The Claims Administrator has received two requests for exclusion, but both were submitted by individuals who are admittedly not Class Members and ineligible to participate in the Settlement. As non-members of the Class, these parties have no interest in the Settlement, or standing to object to the Settlement (which neither did). Nor could they have participated in the Settlement from which they nominally seek exclusion.  See, Mulholland Aff. ¶18, Ex. G

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
OF SETTLEMENT AND PLAN OF ALLOCATION, AND
AWARD OF ATTORNEYS' FEES  AND EXPENSES
Case No. CV-04-06180-RC

7.      The Settlement is the product of a protracted and fiercely contested litigation and negotiation process conducted among able counsel.  The Settlement was reached during the fourth of four intense, focused, and good faith negotiations among counsel with the aid of a nationally regarded mediator and former Judge, Daniel Weinstein of JAMS, Inc.  *See* Declaration of Hon. Daniel Weinstein (Ret.), ¶20 ("Weinstein Decl."), submitted herewith.

8.      The Settlement confers an immediate and substantial benefit on the Class.  At the same time, the certainty of the Settlement eliminates the very serious risk that continued litigation against the Defendants might yield a reduced recovery or even nothing for Plaintiffs and the Class. Entropin terminated its operations in 2005, is no longer listed on the NASDAQ, has an anemic market capitalization of $186,000, and its stock currently trades at less than a penny per share. As such, the only remaining source of funding for the litigation is Entropin's ever-dwindling D&O insurance, which is further depleted as the litigation continues and the costs of its legal defense accrue.

9.      The Company's insurance coverage consists of three policies: a first "tier" of $3.0 million; a second tier of $7.0 million; and a third tier of $5.0 million. At this juncture, the entirety of the first tier has been depleted for payment of legal fees and expenses in defense of these class actions, as has $2.5 million of the second, tier. In essence $5.5 million of the insurance had been expended on legal fees as of the date of the mediation, and substantially more would have been spent had a trial and appeal ensued. Moreover, the third tier insurer has no obligation to provide coverage until the first two policies are exhausted, which obviously would entail further risky litigation. Hence, settling for the entirety of the remainder of the second tier – $4.5 million – ensures that Plaintiffs and the Class obtain a large recovery that would be either reduced or

4

1   lost altogether if the case were to continue towards trial.   The Settlement avoids
2   these pitfalls and provides for an immediate and substantial recovery.

3       10.   The Settlement represents 39% of estimated class-wide damages of
4   $11.5 million based on Plaintiffs' best case scenario of damages—based on
5   Plaintiffs' consultation with a damages expert.  Thus, this recovery represents an
6   excellent result and exceeds the upper limit of the range of typical securities class
7   action settlements.

8       11.   The actual recovery of Class Members is even higher.  Public
9   Offering Class members submitted claims with a aggregate recognized losses of
10  $2,090,887. Mulholland Aff. ¶19.  Because defendants' insurer is obligated to pay
11  no less than $900,000 to the Public Offering Class Members, each will recover
12  approximately 43% of their recognized losses – after payment of the requested
13  legal fees and expenses.

14      12.   The percentage recovery for the private placement and warrant
15  purchasers is also excellent.  Private placement and warrant purchasers submitted
16  claims with aggregate recognized losses of $1,093,435. Mulholland Aff. ¶19.
17  Because the Settlement allocates a minimum of $225,000 to these Class
18  Members, each will receive approximately 21% of their recognized losses – after
19  payment of the requested legal fees and expenses.   According to the January
20  2007 NERA Report, "*Recent Trends in Shareholder Class Action Litigation*", in
21  2007 the median ratio of settlement amount to investor losses recovered was
22  2.2%, the lowest since 1991.[1]   Similarly, the Cornerstone Research report,
23  "*Securities Class Action Settlements, 2006 Review and Analysis*", found that the
24  median settlement as a percentage of estimated damages was 2.4%.   Thus, the

_____

25
26  [1]   Available at www.nera.com.
27
28                                5          Declaration of Laurence M. Rosen in Support
of Settlement and Plan of Allocation, and
Award of Attorneys' fees  and Expenses
Case No. CV-04-06180-RC

1    recovery in this case as a percentage of damages is well above the average in the

2    field.[2]

3          13.    The Plan of Allocation is fair, reasonable, and adequate, as it was

4    formulated with the aid of a financial expert experienced in securities class action

5    settlements, and distributes the Settlement Fund on a pro-rata basis to Class

6    Members, pursuant to the principles articulated in *Dura Pharms., Inc. v. Broudo*,

7    544 U.S. 336 (2005).  Shareholders who purchased and continued to hold their

8    Entropin securities through either or both of the two stock drops identified as

9    being caused by the disclosure of the alleged fraud are allocated a recognized per-

10   share loss for each stock drop based on the amount of such drop.  Thus, each

11   shareholder is treated fairly and compensated pro-rata on the basis of the loss

12   caused by the alleged fraud.

13         14.    The requested Attorneys' Fees and Expenses are reasonable and

14   within the range of previous awards granted in class litigation of this type.  The

15   Notice and Summary Notice to Class Members stated that Plaintiffs' Counsel

16   would seek a fee of up to $1.9 million from the Gross Settlement Fund.  The

17   requested fee is substantially less than plaintiffs' counsels' lodestar for the three

18   related class actions of $3,688,588.50.  A detailed listing of each participating law

19   firm's lodestar enumerating each professional performing services, their position,

20   hourly rates, and hours worked is provided in the Appendix of Counsels'

21   Declarations in Support of an Award of Attorneys' Fees ("Lodestar

22   Declarations") submitted herewith.  The Lodestar Declarations also attach time

23   sheets detailing the specific legal services performed by each professional in the

24

25   _____

26   [2]   Available at www.cornerstone.com and securities.standford.edu

27

28                                    6

four law firms providing legal services to the Class.  A chart summarizing each law firms lodestar calculations for all three class actions is set forth below:

| Law Firm | # of Hours | Blended Hourly Rate[3] | Lodestar |
|---|---|---|---|
| Catanzarite Law Corp. | 2,236.0 | $454 | $1,015,000 |
| Rosen Law Firm | 5,210.7 | $466 | $2,429,266 |
| Zimmerman Walker & Monitz | 363.3 | $450 | $163,485.00 |
| Richardson & Patel | 250.4 | $323 | $ 80,837.50 |
| Totals | 8,060.3 | $458 | $3,688,588.50 |

15.    The requested fee is reasonable in light Plaintiffs' Counsel's enormous investment of time and effort, their assumption of substantial risk in litigating Plaintiffs' claims for over five years with no guarantee of remuneration, the outstanding quality of the result achieved, and similar awards granted in this type of litigation.  Indeed, the requested fee is about half (52%) of counsel's lodestar, which is well under even the extreme low end of the range of multipliers typically awarded in contingent fee class action cases.

16.    It is also significant that there have been no objections to Counsels' request for attorneys fees and expenses and the Notice and Summary Notice informed Class Members that Plaintiffs' Counsel were seeking precisely the amount requested herein.  (*See,* Mulholland Aff., Ex. A-2 & ¶18).

17.    Plaintiffs' Counsel's request for reimbursement of out-of-pocket expenses is also reasonable, fair, and should be approved.  These expenses were

---

[3]   The blended rate is an average hourly rate of all attorneys and paralegals working on the matter. For specific hourly rates of each professional, please see Appendix of Counsels' Lodestar Declarations submitted herewith.

1    required and incurred in the prosecution of this Action over a period of nearly six

2    years, before three courts, through a successful appeal, and in two states.

3        18.    The Lodestar Declarations itemize the out-of-pocket expenses

4    incurred in prosecuting the three related class actions.  The total expenses

5    incurred by the participating law firms in the three related class actions for which

6    reimbursement from the Settlement fund is sought are $405,855.56.

7        19.    For the reasons set forth herein, this Court should find that the

8    Settlement and Plan of Allocation and request for Attorneys' Fees and Expenses

9    are fair, reasonable, and adequate and should be approved.

10        20.    The Action meets each of the requirements necessary to certify the

11    Expanded Class under Fed. R. Civ. P. 23(a) and 23(b)(3).[4]  This Court should,

12    therefore, finally certify the Expanded Class for settlement purposes.

13

14    **II.    BACKGROUND OF THE LITIGATION**

15    **A.    Overview of Plaintiffs' Claims[5]**

16        21.    At all relevant times herein, Entropin was a pharmaceutical company

17    incorporated in Delaware and headquartered in Riverside County, California.

18    Prior to the Company's termination in 2005, Entropin's focus was the

19    development of its sole product, Esterom® solution, a topical formulation for the

20    _____

21    [4] Plaintiffs note that class certification has been obtained in both the California State action
      and the instant federal Action. While the Class already certified in the instant Action

22    includes the purchasers of Entropin units in the March 15, 2000 public offering, the class
      certified in the California State action includes two additional groups: the purchasers of

23    Entropin stock in the July 1999 through September 1999 private placement transactions;
      and the purchasers of Entropin warrants on the open market from March 1, 2000, through

24    May 15, 2001. All three of these groups are included in the expanded Class defined in the
      Settlement.

25

26    [5] The facts and claims are drawn from the Consolidated Class Action Complaint filed with the
      Court on July 30, 2007.  Docket no. 51.

27

28                                    8                    <small>DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
                                                          OF SETTLEMENT AND PLAN OF ALLOCATION, AND
                                                          AWARD OF ATTORNEYS' FEES AND EXPENSES
                                                          Case No. CV-04-06180-RC</small>

1  treatment of impaired range of motion associated with injuries to the shoulder and

2  lower back.  Compl., ¶ 24.

3      22.    On January 28, 2003, Joseph Deveny, Kenneth Linhart, Timothy

4  Cliby, and The Spangenberg Family Trust filed a class action in Superior Court of

5  the State of California for the County of Riverside on behalf of themselves and all

6  persons who acquired the stock and warrants of Entropin, Inc. during the period

7  from August 21, 1998, through September 9, 2002 (the "State Action"). The

8  Complaint alleged violations of the California Corporations Code and of the

9  Securities Act of 1933 (the "1933 Act") arising out of allegedly false and

10  misleading statements in Entropin's publicly disseminated press releases,

11  registration statements and other filings with the Securities & Exchange

12  Commission (SEC) from August 21, 1998 through September 9, 2002. The

13  Complaint alleged that Defendants had misrepresented that Entropin's sole drug

14  under development, Esterom®, had proven effective in a Phase II trial, that

15  Entropin was currently conducting Phase III trials, and that following the trials,

16  the Company would immediately file a new drug application leading to Esterom's

17  commercialization in early 2001.

18      23.    The instant federal Action, filed on July 28, 2004, in the U.S.

19  District Court for the Central District of California by several individual investors

20  who were not plaintiffs in the State Action, is a class action on behalf of (a) all

21  persons who purchased or otherwise acquired Entropin common stock directly

22  from Entropin in the July 1999 through September 1999 private placement

23  transaction (the "Private Placement Class"), (b) all persons who purchased or

24  otherwise acquired Entropin Units consisting of one share of common stock and

25  one warrant to purchase a share of common stock in the March 15, 2000 Public

26  Offering (the "Public Offering Class"), and (c) all persons who purchased or

27  otherwise acquired Entropin warrants on the Nasdaq SmallCap Market during the

28

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
OF SETTLEMENT AND PLAN OF ALLOCATION, AND
AWARD OF ATTORNEYS' FEES  AND EXPENSES
Case No. CV-04-06180-RC

1    period from March 15, 2000, through and including May 15, 2001 (the "Warrant

2    Class"). Collectively the Private Placement Class, the Public Offering Class, and

3    the Warrant Class are referred to herein as the "Expanded Class Members" or

4    "Class Members". Excluded from the Class are Defendants, members of the

5    families of each of the individual Defendants, any parent, subsidiary, affiliate,

6    partner, officer, executive, or director or any Defendant, any entity in which any

7    excluded person has or had a controlling interest, and the legal representatives,

8    heirs, successors, or assigns of any such excluded person or entity.

9        24.    The Public Offering Class alleges violations against all Defendants

10   of sections 10b and 20(a) of the Exchange Act of 1934 (the "'34 Act"), sections

11   11, 12(a)(2), and 15 of the Securities and Exchange Act of 1933 (the "'33 Act"),

12   and sections 25401, 25501, 25504, and 25504.1 of the California Corporations

13   Code arising out of false and misleading statements in a March 15, 2000

14   registrations statement ("Registration Statement") and prospectus ("Prospectus")

15   Defendants filed with the Securities and Exchange Commission (the "SEC"). The

16   Prospectus and Registration Statement are collectively referred to as the

17   "Registration Statement" or "Prospectus".

18       25.    The Warrant Class alleges violations against all Defendants of

19   section 11 of the '33 Act arising out of false and misleading statements in the

20   Registration Statement.

21       26.    The Private Placement Class alleges violations against all

22   Defendants of sections 25401, 25501, 25504, and 25504.1 of the California

23   Corporations Code arising out of false and misleading statements in a private

24   placement memorandum dated July 1, 1999 (the "PPM") distributed to investors

25   in connection with Private Placement of $2.88 million of Entropin stock in July

26   through September 1999. Second Amended Complaint ("SAC") ¶ 20.

27

28                                          10        DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
                                                      OF SETTLEMENT AND PLAN OF ALLOCATION, AND
                                                      AWARD OF ATTORNEYS' FEES AND EXPENSES
                                                      Case No. CV-04-06180-RC

27.     In the March 15, 2000 Public Offering, Entropin sold 2.3 million shares of common stock at approximately $7.0 per share and 2.3 million warrants to purchase common shares at approximately 25 cents per warrant. The Company received gross proceeds of more than $16.6 million from the Public Offering and net proceeds of $14.7 million after underwriting fees. SAC ¶¶ 21, 25.

28.     Plaintiffs allege that Defendants caused to be delivered to Class Members, all of whom are members of the Expanded Class, a copy of the Prospectus or the PPM that contained materially false and misleading information. SAC ¶ 24. Specifically, Plaintiffs allege that Defendants misrepresented and omitted from the Registration Statement and PPM material information from a formal report of the Company's Phase II study of Esterom, dated September 1, 1995 (the "Phase II Report"), which purported to prove positive results in the Phase II study. SAC ¶ 30. While the Phase II Report disclosed that: (a) the placebo tested against Esterom was found to be as or more effective than Esterom for each indication tested; (b) the Phase II Trial did not demonstrate that Esterom was effective; and (c) Entropin would have to repeat the Phase II Study, all of this material information was omitted from the PPM and Registration Statement. SAC ¶¶ 31, 33.

29.     Following the Company's announcement on October 2, 2000, that the Phase III trial of Esterom had failed to meet its endpoint for efficacy at the requisite level of statistical significance, Entropin's stock fell nearly 50%, from $9.20 per share to $4.94. The Company's warrants suffered a similar decline, losing roughly 50%, or $1.94, before market close. In the following days both the stock and the warrants continued to hemorrhage value, eventually settling at $2.19, and $1.06, respectively. SAC ¶ 68.

30.     Investors suffered a second economic injury upon publication of the Company's September 9, 2002 press release, which admitted that Entropin's

11

1   subsequent Phase II/III trials had failed and that the Company would terminate

2   development of the drug .Upon public disclosure, the market price of Entropin

3   stock plummeted another 70%, from $3.32 to $1.04 per share, and the Company's

4   warrants fell from $1.10 to just 13 cents, a drop of over 85%. SAC ¶ 76.

5   **PROCEDURAL HISTORY**

6        **A.    The State Action**

7        31.    As noted in ¶ 21, *supra*, On January 28, 2003, Joseph Deveny,

8   Kenneth Linhart, Timothy Cliby, and The Spangenberg Family Trust filed a class

9   action in Superior Court of the State of California for the County of Riverside on

10  behalf of themselves and all persons who acquired the stock and warrants of

11  Entropin, Inc. during the period from August 21, 1998, through September 9,

12  2002.  The Complaint alleged violations of the California Corporations Code and

13  of the Securities Act of 1933 (the "1933 Act") arising out of allegedly false and

14  misleading statements in Entropin's publicly disseminated press releases,

15  registration statements and other filings with the Securities & Exchange

16  Commission (SEC) from August 21, 1998 through September 9, 2002.

17       32.    Defendants answered the Complaint, and following early discovery,

18  Plaintiffs notified the court of their intention to amend the Complaint.  Before

19  such amendment, Defendants brought a motion for summary judgment based on

20  the statute of limitations. Defendants' initial motion for summary judgment did

21  not reach a hearing. Instead, the parties stipulated to an order granting Plaintiffs'

22  motion for leave to file a First Amended Complaint.   The First Amended

23  Complaint was filed December 17, 2003; a corrected version was filed without

24  objection on April 19, 2004.  Shortly thereafter Plaintiffs moved to certify the

25  action as a class action.

26       33.    Defendants answered the First Amended Complaint and on February

27  5, 2004, filed another motion for summary judgment. Plaintiffs opposed the

28                                    12            DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
                                                   OF SETTLEMENT AND PLAN OF ALLOCATION, AND
                                                   AWARD OF ATTORNEYS' FEES  AND EXPENSES
                                                   Case No. CV-04-06180-RC

1   motion.  Prior to the hearing on the motion for summary judgment, the parties

2   participated in a full-day mediation on April 14, 2004, before mediator Antonio

3   Piazza in San Francisco, CA. The mediation was unsuccessful.

4       34.     While the summary judgment motion was pending, Plaintiffs filed a

5   motion for leave to file a Second Amended Complaint in order to drop one cause

6   of action and narrow the definition of the Plaintiff Class. The Second Amended

7   Complaint dropped the cause of action under California Corporations Code

8   §25400/§25500 and revised the Class definition to include (a) purchasers of

9   Entropin stock in a July 1999 through September 1999 private placement

10  transaction; (b) purchasers of Entropin Units (consisting of one share of stock and

11  a warrant to purchase a share of stock) in a March 15, 2000 public offering; and

12  (c) purchasers of Entropin warrants on the open market from March 15, 2000

13  through May 15, 2001. Defendants filed a notice of non-opposition to the

14  proposed amended complaint.  The trial court granted the motion to amend and

15  the Second Amended Complaint was filed on May 14, 2004.

16      35.     Prior to the summary judgment hearing, the trial court granted

17  Plaintiffs' motion for class certification, certifying the recently amended Class

18  described above, appointing class representatives and appointing the Rosen Law

19  Firm and Richardson Patel as counsel for the Class.

20      36.     Defendants' motion for summary judgment was heard on June 10,

21  2004. The motion was granted by order filed July 1, 2004, and judgment was

22  entered August 18, 2004 as against the Second Amended Complaint.[6]  Plaintiffs

23  timely filed a Notice of Appeal on August 24, 2004.  The Court of Appeals of the

24  _____

25  [6]  The court granted the motion for summary judgment before it entered the order certifying the
26  Class, and hence, never entered the order certifying the Class after granting the motion for
    Class certification at the hearing..

27

28                                          13          DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
                                                        OF SETTLEMENT AND PLAN OF ALLOCATION, AND
                                                        AWARD OF ATTORNEYS' FEES AND EXPENSES
                                                        Case No. CV-04-06180-RC

1   State of California, Fourth District, reversed the grant of summary judgment on

2   July 14, 2006.  The case was remanded to the trial court and has been stayed

3   pending the scheduled trial in the federal Action.

4               **B.      The Federal Action**

5        37.    On July 28, 2004, in the U.S. District Court for the Central District

6   of California, several individual investors who were not plaintiffs in the State

7   Action filed a complaint against Entropin. individually and on behalf of all

8   purchasers of Entropin Units (one share of stock and one warrant) in the March

9   15, 2000 public offering (Docket No.1).  The Complaint alleged violations against

10  all Defendants of §10b, §18 and §20(a) of the Securities Exchange Act of 1934

11  (the "Exchange Act") arising out of inclusion of false and misleading statements

12  in a March 15, 2000 registration statement and prospectus filed with the SEC.

13       38.    The Class defined in this complaint, and later certified, in the Federal

14  Action differed from the class certified in the State Action in two ways.  Firstly,

15  the Federal Action did not include the purchasers in the July 1999 through

16  September 1999 private placement transaction in which Entropin sold $2.88

17  million of stock to investors.  Secondly, the Federal Action did not include

18  purchasers of Entropin warrants on the open market from March 1, 2000 through

19  May 15, 2001. In essence, the classes in the two actions both included purchasers

20  of Entropin Units in the March 15, 2000 public offering by which Entropin raised

21  $16.7 million from investors.

22       39.    On December 2, 2004 Judge Lew appointed Douglas Moreland;

23  David E. Lewis; Edwin B. Berrington; David Zallar and Thomas Murphy as Lead

24  Plaintiffs in the Federal Action.  Lead Plaintiffs filed the First Amended

25  Complaint on December 6, 2004.

26       40.    Entropin, Bailey, and Tachovsky moved to dismiss Plaintiff's First

27  Amended Complaint on January 3, 2005 (Docket No. 33).  Judge Lew granted in

28                                        14

1   part and denied in part Defendants' Motion to Dismiss on January 31, 2005,
2   upholding the §10(b) and §20(a) claims and dismissing the §18 claims with leave
3   to amend the complaint as to the §18 claims. (Docket No. 47), Plaintiffs elected
4   not to file a second amended complaint and Defendants moved for summary
5   judgment on the statute of limitations on March 7, 2005 and answered the First
6   Amended Complaint on March 9, 2005 (Docket No. 57).

7       41.    Plaintiffs opposed the summary judgment motion and Judge Lew
8   denied Defendants' Motion for Summary Judgment on April 11, 2005 (Docket
9   Nos.78 and 80), ordered the case to an Attorney Settlement Officer Panel (Docket
10  No. 82), and set the trial date for June 20, 2006 (Docket No. 83). The parties
11  engaged in extensive discovery through the service of various sets of
12  interrogatories, and requests for production of documents.  The requests yielded
13  over sixty thousand pages of documents, which were reviewed by Plaintiffs'
14  counsel.

15      42.    Document review was followed by depositions of fact witnesses as
16  well as six expert witnesses.  Counsel conducted depositions in California,
17  Nevada, New York, New Jersey, Connecticut, Pennsylvania, Florida, Georgia,
18  South Carolina, North Carolina, Ohio, Colorado, Washington, Missouri and
19  Illinois.  In total, close to 40 depositions were taken in both actions.

20      43.    Plaintiffs moved for Class Certification on September 16, 2005.
21  (Docket Nos. 86 and 88)   On January 23, 2006, Judge Lew certified a class
22  defined as all purchasers of Entropin Units directly in Entropin's March 15, 2000
23  public offering (Docket Nos. 109 and 110).  Defendants then moved for Summary
24  Judgment on loss causation on March 10, 2006 and Judge Lew Denied the motion
25  on April 24, 2006 (Docket Nos. 134 and 137).  The case was set for trial in July
26  2006.

27

28                                        15

44.     On March 17, 2006, the parties participated in a full-day mediation before Hon. Gary Taylor (Ret.) in Los Angeles, CA, which was followed by negotiations via telephone.  The parties were unable to reach any settlement.

45.     On June 5, 2006, Plaintiffs agreed to allow defendants to conduct the deposition of non-party witness Steven Brown—an individual who had coordinated the Phase II Study of Esterom.  According to Plaintiffs, Mr. Brown's deposition and the documents he produced directly evidenced the fraudulent manipulation of the Phase II Study data. Brown produced patient data from the original patient case report forms in the Phase II trial that Entropin claimed had been lost.  The Phase II patient data produced by Brown differed in material respects from the Phase II data Entropin provided to the FDA, evidencing that Defendants' claims of Esterom's efficacy were baseless. Brown's testimony also showed, for the first time, direct evidence that the Phase II Study was not a "double-blinded" study, but had been prematurely un-blinded by Dr. Wynn, the study's investigator, despite Defendants' contrary representations to investors and the FDA.  In light of this new evidence, Defendants moved to continue the trial to November 2006 to permit additional discovery.  Judge Lew reopened discovery and set a September 15, 2006 motion cut-off date.

46.     The parties then deposed Mr. Brown once again, as well as several additional fact witnesses on issues related to Mr. Brown's testimony.

47.     The parties then participated in a full-day Mediation on September 11, 2006 before Hon. Nicholas H. Politan (Ret.) at the Offices of Heller Ehrman, LLP in Hew York, NY, which was followed up by negotiations via telephone. The parties were unable to reach any settlement, however, and in November 2006, defendants each filed a motion for summary judgment on the issue of scienter (Docket Nos. 179 and 194).  Judge Lew transferred the case to Judge Schiavelli, and the parties shortly thereafter stipulated to have Magistrate Judge

16

1  Chapman decide the pending Summary Judgment motion and preside over the

2  trial.

3        48.    This Court denied the motions for summary judgment on May 3,

4  2007 (Docket No. 239). At the hearing, the Court recommended the parties

5  participate in another mediation session prior to the August 6, 2007 trial date.

6        49.    In the interim plaintiffs filed prepared their case for trial, organizing

7  over two hundred trial exhibits and preparing a pre-trial memorandum and in

8  limine motions.

9        50.    On June 3, 2007, the parties participated in a full-day mediation, the

10  third such mediation in the federal action, and the fourth overall, before Hon.

11  Daniel Weinstein (Ret.) in San Francisco, California. The mediation was

12  successful, as the parties agreed to settle all claims against Entropin pending in

13  both the State and Federal Actions.  The Stipulation of Settlement, the result of

14  this mediation and subsequent telephone negotiations, is submitted herewith.

15                    **C.    The Colorado Action**

16        51.    On March 11, 2005, an action alleging state and federal securities

17  law claims was filed in the U.S. District Court for the District of Colorado, Civ.

18  No. 05CV1898, (the "Colorado Action").   The Colorado Action alleged

19  substantially the same claims as those alleged in this federal action, only on

20  behalf of purchasers of Units in Entropin's March 15, 2000 Public Offering and

21  under Colorado law. In addition, the Colorado Action named as a defendant

22  Neidiger, Tucker, Bruner, Inc., the lead underwriter of the Public Offering.

23        52.    One defendant in the Colorado Action moved to dismiss the case and

24  the others moved to stay or transfer the action to this Court in the Central District

25  of California.  The Colorado district court ordered the Colorado Action stayed

26  pending resolution of this Action.

27                    **D.    Resolution of All Related Lawsuits**

28

                                        17

53.     Following the successful mediation before Judge Weinstein on June, 3, 2007, and to facilitate a global settlement of all three State, Federal and Colorado actions, plaintiffs in the Federal Action filed, with Defendants' consent, a Second Amended Complaint, which expands the Class definition in the Federal Action to include purchasers in Entropin's July 1999 through September 1999 private placement transactions and the purchasers of Entropin warrants from March 15, 2000 through May 15, 2001.  Thus, the proposed Settlement class in the Federal Action is identical to the Class certified in the State Action and includes the class in the Colorado Action.  Settlement of the Federal Action will confer a *res judicata* effect upon the claims in the State Action and the Colorado Action, as the Settlement Class and claims defined in the Second Amended Complaint in the Federal Action are identical to those in the State Action and include those in the Colorado Action. If final approval of the Settlement is entered in the Federal Action, the State Action and the Colorado Action will be dismissed.

## III.   CONTINUED   LITIGATION   POSED   CONSIDERABLE OBSTACLES AND SERIOUS RISKS TO THE CLASS

54.     Plaintiffs faced substantial obstacles and risks in continued litigation of their claims.  Notwithstanding Plaintiffs' Counsel's conviction that the claims asserted are meritorious, attempting to obtain a greater recovery for the Class through further litigation entails considerable risk, with no guarantee of success.

### A.   Risks in Attempting to Prove Liability

55.     In order to prevail at trial, Plaintiffs would have to establish the falsity and materiality of the alleged misstatements and omissions contained in the Company's Registration Statement, Prospectus, PPM, and press releases. While there always is a high degree of uncertainty and difficulty inherent in

1    attempting to convince a lay jury of one interpretation of facts as tenaciously

2    contested as these, here that task was further complicated by the highly scientific

3    nature of the information at issue.

4          56.    As a prerequisite to arguing any of the securities-specific elements of

5    their claims, at trial Plaintiffs would first have to establish that Defendants issued

6    materially false and misleading statements and omissions regarding medical data,

7    clinical trial results, and the FDA regulations governing the conduct of those

8    trials. A jury assessing these data would be presented with the parties' conflicting

9    interpretations of sophisticated statistical analyses, medical studies, expert witness

10    testimony, and the minutiae of FDA regulations.

11         57.    In arguing their allegations of falsity at trial, Plaintiffs would be

12    required to prove to a lay jury that the data presented in the Phase II Report did

13    not support Defendants' contention that the Phase II Study demonstrated

14    Esterom's efficacy to the point of "statistical significance". SAC ¶ 33. Plaintiffs'

15    challenge to the Company's contention is founded on a critique of the statistical

16    methodology used by Defendants. Undeniably, attempting to prove the

17    inaccuracy of one statistical method relative to another would be difficult, and

18    under even the best of circumstances Plaintiffs would have no guarantee that a

19    jury would be receptive to their methodological critique. SAC ¶ 33.

20    **B.**    **Scienter**

21         58.    Plaintiffs also face an even more challenging issue: establishing that

22    Defendants' alleged misstatements and omissions were made with the requisite

23    state of mind. In this case, simply alleging scienter adequately was a difficult task

24    accomplished only after Plaintiffs successfully contested Defendants' motion to

25    dismiss and a subsequent motion for summary judgment, both of which

26    specifically challenged Plaintiffs' scienter allegations. Plaintiffs could be assured

27

28                     19

1  that at trial Defendants would mount a vigorous defense addressing this element

2  of their claims.

3      59.    Recently, the Supreme Court reiterated that a plaintiff need allege a

4  cogent and compelling *strong* inference of scienter, taking into account all

5  competing inferences of nonculpability.  *Tellabs, Inc. v. Makor Issues & Rights,*

6  *Ltd.*, 127 S.Ct. 2499, 2509-10 (2007). As with the falsity element of their claims,

7  here Plaintiffs would have to satisfy this very exacting standard within the

8  particularly abstruse realms of FDA regulation, clinical trials, and statistical

9  analysis. Defendants' alleged misrepresentations regarding the outcome of the

10  Phase II study would have to be proven to have been issued with a particular state

11  of mind. Given the plethora of defenses available to Defendants on both points –

12  ranging from simple ignorance to honest differences of professional opinion to

13  preferences for competing statistical methodologies – a trial would present

14  tremendous difficulties.

15      **C.    Loss Causation**

16      60.    Additionally, Plaintiffs would encounter further uncertainty and

17  difficulty in their efforts to establish loss causation, *i.e.*, that the disclosure of the

18  alleged fraud was the proximate cause of Plaintiffs' losses. In *Dura Pharms., Inc.*

19  *v. Broudo*, The United States Supreme Court recently confirmed that the law

20  requires that "a plaintiff prove that the defendant's misrepresentation (or other

21  fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura*

22  *Pharms., Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577

23  (2005).

24      61.    In one of their motions for summary judgment, Defendants asserted

25  that the decline in the price of Entropin's stock was not caused by the disclosure

26  of the alleged fraud. Defendants would reiterate this defense at trial. In analyzing

27  this issue, too, a jury would be asked to assess very technical subjects, such as

28

Declaration of Laurence M. Rosen in Support
of Settlement and Plan of Allocation, and
Award of Attorneys' fees  and Expenses
Case No. CV-04-06180-RC

1  systemic fluctuations in securities markets, sector-specific issues, and the ability

2  of the market and of particular securities to assimilate new information. As with

3  the issues of falsity and scienter, here Plaintiffs possessed no guarantee that their

4  claims would prevail. Indeed, the uncertainty inherent in further litigation to

5  establish liability provides a compelling rationale for approval of the proposed

6  Settlement.

7      62.    At trial, Defendants' experts assuredly will contend that all of the

8  losses suffered by the Class were due to factors completely unrelated to any

9  conduct of Defendants. If successful, such a defense could eviscerate Plaintiffs'

10  claims. Defendants' damage experts would almost certainly opine that non-

11  recoverable market factors caused the drops in the prices of Entropin securities

12  during the relevant time period. In the event that a jury agrees with Defendants'

13  damages expert rather the Plaintiffs', damages could be reduced to nil.

14  **D.    Damages**

15      63.    Plaintiff also faced the risk of establishing the proper amount of

16  damages.  Plaintiff's best-case scenario, as estimated by Plaintiff's damages

17  expert, determined class-wide damages of $11.5 million.  These figures are

18  disputed by Defendants whose experts opined that the best case damages scenario

19  for the Public Offering Class was $6.2 million. Defendants' expert refused to

20  provide an estimate as to damages to private placement purchasers and warrant

21  purchasers it was understood from conversations with defense counsel that

22  defendants estimated damages of approximately $140,000 for the warrant

23  purchasers and $1.5 million for the private placement purchasers or $7.84 million

24  in total. However, the $1.64 million in damages for private placement and warrant

25  purchasers would not have been presented at trial in the Federal Action.

26  Moreover, this issue could be rendered moot if Defendants were to succeed in

27  defeating even one of the elements of Plaintiffs' claims.

28

64.   As with loss causation, the amount of damages will be a hotly contested issue resolved by yet another "battle of the experts" that will be time consuming and costly. Such expert evaluations are based not only on stock price history but on other more elusive and subjectively measured factors, including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables. The complexity inherent in any attempt to compare such analyses – much less for a lay jury likely unfamiliar with sophisticated financial and economic models – renders further litigation highly risky.

65.   At trial, Lead Plaintiffs would have faced a motion in limine by Defendants to preclude Lead Plaintiffs' damage expert's testimony under the *Daubert* test and risked a decision that the expert's valuation model might not be admissible in evidence. If Lead Plaintiffs survived the *Daubert* motion, the loss causation and damage valuations of Lead Plaintiffs' and Defendants' experts would vary substantially.

66.   Although Plaintiffs remain confident that they could present reliable expert testimony to sustain their burden on damages, Plaintiffs cannot predict what the jury's decision would have been when faced with competing experts. Settlement of this Action eliminates the substantial difficulty, cost, and risk posed by these complex and highly technical "battles".

**E.    The Company's Financial Condition**

67.   Among Plaintiffs' principle considerations in approaching settlement negotiations was the dire financial condition of Entropin. Since the filing of the California State Action in 2003, Entropin has been de-listed from the NASDAQ SmallCap Market, and its market capitalization currently is a meager $186,000. The Company terminated its operations in 2005 and at present its stock trades at

Declaration of Laurence M. Rosen in Support
of Settlement and Plan of Allocation, and
Award of Attorneys' fees and Expenses
Case No. CV-04-06180-RC

1  less than one cent per share. Entropin has no viable products and no prospects of
2  ever generating any revenue. Accordingly, Plaintiffs are aware that the
3  Company's financial wherewithal will only decline as this litigation progresses.
4  Consideration of this reality supports approval of a fair, adequate, and reasonable
5  settlement now rather than after Entropin's resources are reduced further.

6      68.    Neither Individual Defendant Bailey nor Individual Defendant
7  Tachovsky possesses the financial resources necessary to contribute meaningfully
8  to a judgment. Both Bailey and Tachovsky left Entropin in May 2005, and
9  throughout the course of the litigation both have indicated to Plaintiffs' Counsel
10 that they lack the means to fund any judgment personally. It is the informed and
11 experienced judgment of Plaintiffs' Counsel, who have prosecuted dozens of
12 securities fraud class actions against individual defendants such as these, that
13 further pursuit of the personal assets of the Individual Defendants would be
14 neither fruitful nor cost-effective.

15     69.    The only source of funding for a potential settlement or judgment is
16 Entropin's D&O insurance. At the outset of the litigation the Company's
17 insurance coverage was three-tiered: the first policy "tier" provided $3.0 million
18 in coverage; the second tier, which could not be accessed until the first was
19 exhausted, provided $7.0 million; and the third tier, which would become
20 effective only after depletion of both preceding tiers, provided $5.0 million in
21 coverage.

22     70.    The cost of the Company's legal defense in the federal and
23 California State actions has consumed the entirety of the initial $3.0 million
24 coverage tier. As of June 2, 2007, the cost of Entropin's legal defense has drained
25 roughly $2.5 million from the second tier, leaving $4.5 million available in the
26 second tier before the any funding from third tier can be obtained.  In total,
27
28                           23

1  defendants expended $5.5 million of their D& O insurance for legal fees and

2  expenses in defending the three class actions.

3      71.    The provider of Entropin's second tier policy, XL Specialty

4  Insurance, has consistently maintained that it will contest its obligation to pay any

5  judgment entered against Entropin at trial. Accordingly, even if Plaintiffs were to

6  prevail at trial, an appeal and additional lawsuits almost assuredly would be

7  required before Plaintiffs could access any of the remaining second tier of

8  funding, much less the third.

9      **F.    Settlement Negotiations and the Result Achieved**

10     72.    The Settlement was reached only after Plaintiffs' Counsel: (a)

11  performed the exhaustive investigation and litigation effort described in ¶¶ 5, 21-

12  50, *supra* including over 30 depositions, 3 motions to dismiss, 4 summary

13  judgment motions, 2 class certification motions and preparation of the case in its

14  entirety for trial; (b) participated in three good-faith but ultimately unsuccessful

15  mediations with Defendants; (c) prepared a comprehensive mediation statement,

16  detailing the strengths and weaknesses of the Action; and (g) prepared for and

17  engaged in an all-day, in-person mediation and subsequent telephonic

18  negotiations that lead, after many months, to the successful resolution of the

19  Action.  By the time we reached the Settlement – roughly four and a half years

20  after the commencement of the California State Action – Plaintiffs had gained an

21  eminently well-informed understanding of the strengths and weaknesses of their

22  case.

23     73.    As the case progressed towards it August 7, 2007 trial date, the Court

24  directed the parties to mediate this Action.  The parties agreed to participate in a

25  fourth mediation, this one before a nationally recognized mediator and former

26  judge, the Honorable Daniel Weinstein, in San Francisco, California.  *See*

27  Weinstein Decl., ¶¶ 2, 5.

28

DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
OF SETTLEMENT AND PLAN OF ALLOCATION, AND
AWARD OF ATTORNEYS' FEES AND EXPENSES
Case No. CV-04-06180-RC

74.     In preparation for the mediation, scheduled for June 3, 2007, Plaintiffs' Counsel conducted additional document review and damages analysis, focusing primarily upon the damages figures recently produced in connection the California State Action. Plaintiffs' Counsel also selected the most persuasive exhibits to be presented at trial for use at mediation. These efforts culminated in composition of a mediation statement that was exchanged with the Defendants and submitted to Judge Weinstein.  *See* Weinstein Decl., ¶¶ 4, 8.

75.     The mediation was attended by Jerry Marks from Heller Ehrman, counsel for Defendant Entropin, attorney Jim Goldman from Pircher, Nichols & Meeks, counsel for the Individual Defendants, attorney Daniel Standish from Wiley Rein, counsel for Defendants' insurer XL Specialty Insurance Company, and attorneys Ken Catanzarite from Catanzarite Law Corporation and Laurence Rosen of the Rosen Law Firm, P.A., counsel for Plaintiffs.  Based upon the above substantial litigation efforts over four and half years, Plaintiffs and Plaintiffs' Counsel were in a position to evaluate fully all the risks of trial during the negotiations.  To that end, the issues still unsettled after the exhaustive motion practice already completed were briefed in the mediation statements and argued between the parties at the mediation.  *See* Weinstein Decl., ¶¶ 4, 11-12.

76.     After these vigorous arm's-length discussions as to legal and factual issues still hotly contested at this juncture in the litigation, and with the aid of Judge Weinstein, the parties were able to agree in principle to a settlement.

77.     Following the mediation, from June to September of 2007, with the aid of Judge Weinstein and his assistant Richard Reisberg, the parties continued arm's-length and good faith negotiations in drafting the Stipulation and related documents.

78.     Settlement at this time avoids those risks and further costly litigation, and provides Class Members with the opportunity to receive an immediate,

1    certain, and substantial recovery.  It is, therefore, the opinion of Plaintiff's

2    Counsel that the risks involved, balanced against the certainty of the substantial

3    benefits obtained by the current Settlement, more than justify approval of this

4    Settlement.

5        79.    Plaintiff's Counsel should be rewarded for this substantial, long-

6    awaited, and exceptionally hard-fought Settlement.  *See,* Weinstein Decl., ¶ 18,

7    19, 22.

8    **IV.    EXPERIENCE OF COUNSEL**

9        80.    Plaintiffs' Counsel, The Catanzarite Law Corporation and The Rosen

10   Law Firm, P.A., have extensive experience in securities class action litigation.

11   Plaintiffs' Counsel have successfully represented investors in securities class

12   actions across the country and have obtained many significant settlements on

13   behalf of their clients. Based on Plaintiffs' Counsel's experience, Plaintiffs'

14   Counsel believe that the proposed Settlement is reasonable, fair, and adequate in

15   light of the risks and issues identified herein.  *See* Firms' Resumes, attached as

16   Exhibits A in the Appendix of Counsels' Lodestar Declarations in Support of an

17   Award of Attorneys Fees and Expenses.

18   **V.    THE REACTION OF THE CLASS SUPPORTS APPROVAL**

19       81.    Pursuant to this Court's November 8, 2007 Order of Preliminary

20   Approval of Settlement and its March 17, 2008 Order Partially Amending the

21   Order of Preliminary Approval of Settlement Filed November 8, 2007, on or

22   before November 29, 2008, over 5,420 copies of the Notice of Pendency and

23   Settlement of Class Action (the "Notice") were mailed to Class Members and a

24   summary notice was published in *Investors Business Daily* and on the internet

25   over PRNewswire.  *See* Mulholland Aff, ¶¶ 14,  17.

26       82.    No Class Member has come forward to object to any aspect of the

27   Settlement, Plan of Allocation, the Notice, or the request for Attorneys' Fees and

28

26

1  Expenses.  Nor has any valid Class Member sought exclusion from the Class.  *See*

2  Mulholland Aff., ¶ 18.[7]

3       83.    Because the proposed Settlement has been overwhelmingly accepted

4  by the members of the Class, including by institutions that are known to have

5  purchased Entropin securities, this factor weighs heavily in favor of approving the

6  Settlement, the Plan of Allocation, and the request for Attorneys' Fees and

7  Expenses.  *See* Mulholland Aff. ¶ 18.

8  **VI.    THE NOTICE OF THE SETTLEMENT WAS MADE PROPERLY**

9  **TO THE CLASS**

10       84.    On or before November 29, 2008, pursuant to the Court's Notice

11  Order, SCS caused over 5,420 copies of the Notice and Proof of Claim form to be

12  mailed by first class mail to potential Class Members, including those to nominee

13  account holders and institutional groups.  *See* Ex., 1, Mulholland Aff. ¶¶ 4, 13,

14  14.  Additionally, the Notice and Proof of Claim form were published on the

15  Claims Administrator's and Lead Counsel's website, and a Summary Notice was

16  also published in *The Investors Business Daily* and electronically on the PR

17  Newswire on or before November 29, 2007.  *See* Mulholland Aff.  ¶ 17.

18       85.    The Court-approved Notice explains the background and terms of the

19  Settlement and provided potential members of the Class with the date of the final

20  approval hearing.  The Notice provides Class Members with a full and explicit

21  explanation of the Settlement, the Plan of Allocation, the anticipated fee and

22  expense requests and the rights and options of Class Members.  *See*, , Mulholland

23  _____

24  [7] While Plaintiffs' Counsel have received two purported requests for exclusion, neither of the

25  requests was submitted by an actual Class Member. In both cases, the individuals submitting the purported requests for exclusion were self-identified non-Class Members, as both purchased

26  Entropin securities on the open market after the March 15, 2000 public offering and hence fall outside of the definition of the Class.  *See*, Mulholland Aff. ¶18.

27

28                              27              DECLARATION OF LAURENCE M. ROSEN IN SUPPORT
OF SETTLEMENT AND PLAN OF ALLOCATION, AND
AWARD OF ATTORNEYS' FEES AND EXPENSES
Case No. CV-04-06180-RC

1   Aff, Ex. A-2. This Notice complies with the requirements of the Federal Rules of
2   Civil Procedure, the PSLRA, and due process, and it is similar to the procedures
3   approved in other cases.

4   86.   The Notice and Summary Notice advised Class Members that they
5   could object no later than January 29, 2008, to the Settlement, the Plan of
6   Allocation, and/or the application for attorneys' fees and expenses. Class
7   Members were further informed that they could exclude themselves from the
8   Class on or before February 26, 2008. *See* Mulholland Aff., Ex. A-2.

9   87.   The Notice provided Plaintiffs' Counsel's estimates of what the
10   recovery represents on a per share basis to Class Members with and without the
11   requested Attorneys' Fees and Expenses. *See* Mulholland Aff., Ex. A-2. There
12   were no undisclosed assumptions in these calculations and the calculations were
13   made in consultation with Plaintiff's damages expert.

14   **VII.   THE PLAN OF ALLOCATION SHOULD BE APPROVED AS IT IS**
15   **FAIR AND REASONABLE**

16   88.   The Plan of Allocation is the product of extensive financial damages
17   analysis of the Class Members' claims by a well-respected and experienced
18   financial consultant in the field of securities litigation. Lead Plaintiffs' financial
19   consultant performed a damages analysis that evaluated whether certain news
20   events accompanying the two stock price drops during the Class Period had a
21   statistically significantly adverse effect on Entropin's stock price. This analysis
22   required the preparation of a "market model" that estimates how Entropin's stock
23   price reacted relative to the relevant NASDAQ biotechnology stock index during
24   the Class Period.

25   89.   During the Class Period, there were two partially corrective
26   disclosures on October 2, 2000 and September 9, 2002. The Plan of Allocation
27   does not discriminate against either of these stock drops, and the Settlement Fund

28

28

1    allows for *pro rata* distributions of a per-share amount based on the drop in the
2    stock price upon each of the two disclosures.   Moreover, consistent with
3    principles explained in *Dura*, there are no recognized losses for "in-and-out"
4    purchasers — purchasers who bought and sold prior any revelation of the truth
5    relating to the alleged fraud.   Thus, the plan of allocation assigns a recognized
6    loss to each Class Member based on the purchase of the shares acquired during
7    the Class Period less the amounts related to the two alleged stock drops.   In this
8    manner, each member of the Class will receive an identical pro-rata share of the
9    Net Settlement Fund.    Plaintiffs' Counsel and their financial consultant
10   determined that this was the fairest method of allocation the Net Settlement Fund.

11   **VIII.  THE   REQUESTED   ATTORNEYS'   FEES   ARE   FAIR   AND**
12   **REASONABLE**

13       90.    The lodestar method for compensating attorneys in common fund
14   cases is accepted and appropriate and right method in this case.   First, it is
15   consistent with applicable Ninth Circuit case law as set forth in the Memorandum
16   of Points and Authorities in Support of Lead Plaintiffs' Motion for Attorneys'
17   Fees and Expenses and An Award to Lead Plaintiff (the "Fee Memorandum") pp.
18   4-6.   Second, because the lodestar is calculated the number of hours of legal
19   services performed for the Class multiplied by market-based hourly billing rates,
20   the lodestar approach is a more objective measure of compensation. Thirdly,
21   where the percentage method would produce an unjust or unreasonable fee, the
22   lodestar method is more appropriate.

23       91.    Plaintiffs' Counsel seek an award of attorneys' fees of $1.9 million,
24   which equates to 42% of the Gross Settlement Fund, a percentage that is on the
25   high end of the range of fees awarded in the Ninth Circuit, and other federal
26   courts in cases of this type.   *See* Fee Memorandum pp. 13-14; *see also* true and
27   correct excerpts of: Thomas E. Willging, Laural L. Hooper & Robert J. Niemic,

28
Declaration of Laurence M. Rosen in Support
of Settlement and Plan of Allocation, and
Award of Attorneys' fees  and Expenses
Case No. CV-04-06180-RC

1   *Empirical Study of Class Actions in Four Federal District Courts: Final Report to*
2   *the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996)
3   attached hereto as Ex. 2; Denise N. Martin, Vinitam M. Juneja, Todd S. Foster,
4   Frederick C. Dunbar, Recent Trends IV.- *What Explains Filings and Settlements*
5   *in Shareholder Class Actions?*, at 12-13 (NERA Nov. 1996)  attached hereto as
6   Ex. 1; *see also* true and correct copies of unreported Orders attached hereto as Ex.
7   3.

8        92.   While the requested fee is an upward departure from the "25%
9   benchmark," the $4.5 million Settlement achieved represent 39% of estimated
10   class-wide damages of $11.5 million.  *See ¶¶* 8,  40, *supra.*  Additionally, the
11   actual amount claimants will receive in this Settlement is extraordinary.  Public
12   Offering claimants will receive 43% of recognized losses and private placement
13   and warrant claimants will receive 21% of recognized losses –*after* payment of
14   legal fees and expenses. In light of these stellar results and the substantial effort
15   expended by Plaintiffs' Counsel (*See ¶¶* 5, 31-52, *supra.*)  such a high
16   percentage recover justifies the requested fees.  Given similar facts, courts have
17   awarded comparable fees in other similar litigation.  *See* Fee Memorandum pp.
18   17-18.

19        93.   In light of the outstanding quality of the Settlement achieved, the
20   enormous amount of time and effort required to achieve it, and the reasonableness
21   of the fee requested, it is no surprise that out of the more than 5420 Notices that
22   were mailed to potential Class Members, not a single person has come forward to
23   object to the  requested fee.  *See* Mulholland Aff. ¶ 18.

24        94.   It also bears noting the Judge Weinstein strongly supports the
25   requested award of attorneys' fees and expenses based on the excellent
26   percentage recovery obtained for Class Members and the substantial amount of

27

28

1   legal work plaintiffs' counsel has performed on behalf of the Class. Weinstein

2   Decl. ¶18, 22.

3          95.    Granting Plaintiffs' Counsels' request for fees will not adversely

4   affect Class Members. The Settlement Stipulation provides that the amount of the

5   Settlement Fund for payment to Class Members will not be enhanced or

6   diminished by the fee request. Rather, the amount paid to Public Offering Class

7   Members varies only based on the aggregate recognized losses of claims filed,

8   while private placement and warrant Class Members will receive a fixed amount

9   of $225,000.  If the Court awards attorneys' fees of less than the $1.9 million

10  requested, the difference will revert to XL Specialty Insurance, not Class

11  Members.

12         96.    Plaintiffs' Counsel faced significant risks in pursuing this Action.

13  *See* ¶¶ 54-66, *supra.*  In fact, this was not an Action where any recovery was

14  assured.    Adding to these risks, Plaintiffs' Counsel have received no

15  compensation during the time the Action has been pending.  Their fees are totally

16  contingent and dependant upon achievement of a successful result and an award

17  by this Court.  Plaintiffs' Counsel believe that the outstanding Settlement was

18  primarily the result of their persistence, hard work, and skill exercised over a

19  course of five and half years.

20  **IX.   THE  NEED  TO  ENSURE  AVAILABILITY  OF  COMPETENT**

21  **COUNSEL IN HIGH-RISK, CONTINGENT SECURITIES LITIGATION**

22         97.    The above discussion does not consider the real possibility of no

23  recovery and no payment of fees and expenses to Class Counsel.  It is perhaps not

24  well known that a law firm handling complex, contingent-fee litigation frequently

25  have cases dismissed and incur financial losses as a result.  Significant time and

26  resources have been expended in losing efforts.  The factor being labeled by the

27

28                                    31

1  courts as "the risks of litigation" is a serious matter for attorneys making a living

2  on a contingency fee basis.

3      98.    There are instances of Plaintiff's Counsel in contingent cases such as

4  this, after the expenditure of substantial time, have received no compensation.  It

5  is unfortunate but true that Plaintiff's Counsel who litigate cases in good faith and

6  receive no fees are often the most diligent members of the plaintiff's bar.

7      99.    Onlookers often focus on the aggregate fees awarded, but fail to take

8  into consideration that fees, if obtained in successful litigation, are taxed by

9  federal, state and local authorities, and, when reduced to the bottom line, are far

10  less imposing to each individual involved than the aggregate fee awarded appears.

11  Attorneys who specialize in contingent matters live in a world of uncertainty.

12  Changes in the law through legislation or judicial decree can be catastrophic,

13  frequently affecting contingent counsel's entire inventory of pending cases.

14  These are real threats.

15      100.    Courts have repeatedly held that is it in the public interest to have

16  experienced and able counsel enforce the securities laws and regulations

17  pertaining to the duties of officers and directors of public companies.  If this

18  important public policy is to be carried out, the courts must award fees that will

19  adequately compensate private plaintiff's counsel, taking into account the

20  enormous risks undertaken with a clear view of the economics of a securities

21  class action.

22      101.    When Plaintiffs' Counsel undertook to act for the Plaintiffs in this

23  matter, it was with the knowledge that we would spend many hours of hard work

24  with no assurance of ever obtaining any compensation for our efforts, or even for

25  the overhead for our operations, which over five and half years of litigation has

26  become an increasingly substantial consideration.  We were aware that the only

27  way we would be compensated was to achieve a successful result.  The benefits

28

conferred on the Class by this Settlement are particularly noteworthy in that a Settlement Fund of this quality was obtained for the Class despite the existence of substantial risk and an exceptionally hard-fought, protracted, and vigorous defense mounted by Defendants.

102. Plaintiffs Counsel also forewent other fee paying assignments and focused considerable resources to obtain a positive result in this litigation. This opportunity cost is not theoretical, as each law firm paid the salaries of its attorneys to perform services on behalf of the Class rather than obtain a more immediate financial return from fee other paying clients. I personally recall losing out on a very lucrative assignment as a result of the intensive demands of this litigation.

## XI.   THE EXPENSES INCURRED WERE NECESSARY TO PROSECUTE THIS ACTION EFFECTIVELY

103. Plaintiffs' Counsel also request reimbursement of the $375,000 in expenses they and counsel working under their direction incurred to prosecute this Action. In addition to travel expenses, mediation fees, online legal research, copying costs, postage, court filing fees, and other similar costs, Plaintiffs' Counsel incurred substantial expense in connection with the retention of an FDA regulatory, drug development and statistics experts, as well as damages experts and an expert in behavioral finance. The expenses incurred were necessary to the effective prosecution of this Action and reflect the records of each of respective law firms appointed to represent Lead Plaintiffs. *See* Appendix of Counsels' Lodestar Declarations in Support of an Award of Attorneys Fees and Expenses.

## XII.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

104. Through its November 8, 2007 Order of Preliminary Approval of Settlement, the Court preliminarily certified the proposed Expanded Class for settlement purposes. As nothing has changed since, the Expanded Class should

1    be finally certified for settlement purposes defined as "all persons and entities that

2    acquired (1) Entropin Units (a security consisting of one share of common stock

3    ("Stock") and a warrant to purchase a common share ("Warrant") in a public

4    offering on or about March 15, 2000 (the "Public Offering Class"), or (2)

5    common stock of Entropin in a series of private placements from July through

6    September 1999 (the "Private Placement Class"), or (3) warrants in the open

7    market during the period from March 15, 2000 through May 15, 2001 (the

8    "Warrant Class") (Collectively the "Class") and were damaged thereby. Excluded

9    from the Class are Defendants, members of the families of the individual

10   Defendants, any parent, subsidiary, affiliate, partner, officer, executive, or

11   director of any Defendant, any entity in which any excluded person has or had a

12   controlling interest, and the legal representatives, heirs, successors, or assigns of

13   any such excluded person or entity. Also excluded from the Class are those

14   persons who file valid and timely requests for exclusion in accordance with this

15   Order."

16       105.  This action satisfies the four requirements for class certification

17   provided in Rule 23(a): (a) the Class is so numerous that joinder of all members is

18   impracticable; (b) there are questions of law or fact common to the Class

19   Members; (c) the claims or defenses of the representative parties are typical of the

20   claims of the Class; and (d) the representative parties will and have fairly and

21   adequately protected the interests of the Class.

22       106.  Entropin's  common stock was actively traded on the NASDAQ

23   SmallCap Market beginning on March 15, 2000.  Entropin, various underwriters,

24   and Plaintiffs' Counsel provided the names of over 772 shareholders of record to

25   whom the Claims Administrator initially mailed the notice. *See* Mulholland Aff. ¶

26   4.  Therefore, the numerosity requirement is easily satisfied.

27

28

Declaration of Laurence M. Rosen in Support
of Settlement and Plan of Allocation, and
Award of Attorneys' fees  and Expenses
Case No. CV-04-06180-RC

107.   Given that this is a federal securities action in which it is alleged that Defendants failed to disclose publicly material information and/or issued misleading statements to the market regarding the clinical efficacy and commercial viability of Entropin's sole product, Esterom, there is little question that there are common issues of law and fact or that common issues of law and fact predominate.  The allegations of the Complaint revolve around this "common nucleus," which is the hallmark of a federal securities class action.

108.   Since the Plaintiffs purchased Entropin securities pursuant to the Prospectus or the PPM based on the same alleged misrepresentations and omissions, their claims are typical of those of other Class Members.

109.   The diligent efforts of Plaintiffs and Plaintiffs' Counsel to prosecute this Action over a course of more than five years and through over half a dozen dispositive motions, as described herein, demonstrate that Plaintiffs and their counsel have more than adequately represented and acted for the benefit of the Class as a whole.

110.   This Action also satisfies Rule 23(b)(3) requirements as: (a) there are common questions of law and fact that predominate over individual questions specific to Class Members, and (b) a class action is superior to other available methods for resolving this Action.

## XIII. CONCLUSION

111.   The Settlement represents an excellent result for the Class in a case fraught with risk and it should be approved as fair, reasonable and adequate.  The Expanded Class should also be certified for settlement purposes under Fed.R.Civ.P. 23(a) and 23(b)(3).

I declare under penalty of perjury that the foregoing is true and correct. Executed this  8th day of  May, 2008.

1    Dated:  May 8, 2008                    Respectfully submitted,

2

3

4                                           Laurence M. Rosen  (SBN 219683)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36