Kenneth J. Catanzarite (No. 113750)
Jim Travis Tice (No. 153867)
CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, CA 92801
Tel: 714-520-5544
Fax: 714-520-0680

Attorneys for Lead Plaintiffs
and the Class

Laurence Rosen (No. 219683)
Phillip Kim (*Pro Hac Vice*)
THE ROSEN LAW FIRM, P.A.
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

Associated Counsel for Lead
Plaintiffs and the Class

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| In re: | No. CV-04-06180 RC |
| ENTROPIN, INC.<br>SECURITIES LITIGATION | MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>LEAD PLAINTIFFS' MOTION FOR<br>AWARD OF ATTORNEYS' FEES<br>AND EXPENSES<br><br>Hearing Information:<br>DATE: May 29, 2008<br>TIME: 9:30 a.m.<br>CTRM: 23 - 3d Floor (Spring Street) |

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii.

I.   PRELIMINARY STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.

II.  APPLICABLE LEGAL STANDARD GOVERNING AWARD OF
     ATTORNEYS' FEES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.

     A.  An Award of Legal Fees Is Proper in Common Fund Cases . . . . . . . . . 3.

     B.  The Requested Fee Is Reasonable Under the Lodestar Method of
         Awarding Attorneys' Fees in Common Fund Cases  . . . . . . . . . . . . . . 5.

III. CONSIDERATION OF RELEVANT FACTORS JUSTIFIES
     APPROVAL OF THE  FEES REQUESTED  . . . . . . . . . . . . . . . . . . . . . 8.

     A.  The Result Achieved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.

     B.  The Contingent Nature of the Fee and the Financial Burden
         Carried by Plaintiff's Counsel  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.

     C.  The Skill Required and the Quality of the Work . . . . . . . . . . . . . . . 13.

IV.  THE LENGTHY DELAY IN PAYMENT JUSTIFIES THE
     REQUESTED FEE AWARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16.

V.   THE REQUESTED FEE IS REASONABLE EVEN THOUGH IT IS A
     HIGHER THAN AVERAGE PERCENTAGE OF THE RECOVERY  . . . 16.

VI.  COUNSEL'S OUT-OF-POCKET EXPENSES ARE REASONABLE,
     WERE NECESSARILY INCURRED TO ACHIEVE THE
     SETTLEMENT, AND THE REQUEST FOR REIMBURSEMENT
     SHOULD BE APPROVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19.

VII.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

# TABLE OF AUTHORITIES

Page No.

*Cases*:

*Abrams vs. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19.

*Alyeska Pipeline Serv. Co. vs. Wilderness Soc'y*,
    421 U.S. 240 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.

*Arenson vs. Bd. of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15.

*AUSA Life Ins. Co. vs. Ernst & Young*,
    39 Fed. Appx. 667 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.

*Bateman Eichler, Hill Richards, Inc. vs. Brenner*,
    472 U.S. 299 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.

*Boeing vs. VanGemert*,
    444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.,18.

*Bratcher vs. Bray-Doyle Indep. Sch. Dist. No. 42*,
    8 F.3d 722 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19.

*Central Railroad & Banking Co. of Ga. vs. Pettus*,
    113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885) . . . . . . . . . . . . . . . . . . . . 4.

*City of Detroit vs. Grinnell Corp.*, 495 F.2d 44870 (2d Cir.1974) . . . . . . . . . . . 5.

*Davis vs. City and County of San Francisco*,
    976 F.2d 1536, 15545 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.

*Doglow vs. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.

*Edmonds vs. United States*,
    658 F.Supp. 1126 (D.S.C.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

*EVCI Career Colleges Holding Corp. Secs. Litig.,*
    2007 WL 2230177 (S.D.N.Y. Jul. 17, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 11.

*Fischel vs. Equitable Life Assur. Society of U.S.,*
    307 F.3d 997 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.

*Genden vs. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    741 F. Supp. 84 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21.

*Goldstein vs. MCI WorldCom,*
    340 F.3d 238 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.

*Gottlieb vs. Wiles,* 150 F.R.D. 174, 186 (D. Colo. 1993),
*rev'd & remanded on other grounds sub nom. Gottlieb vs. Barry,*
    43 F.3d 474 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20.

*Harris vs. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19., 20., 21.

*Hensley vs. Eckerhart,*
    461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.

*Heritage Bond,*
    2005 WL 1594389 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Adac Labs. Secs. Litig.,*
    Master File No. C-98-4934-MHP (N.D. Cal. Sept. 18, 2000) . . . . . . . . . . 17.

*In re AOL Time Warner, Inc. Sec. Lit.,*
    2006 WL 3057232 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

*In re Bankamerica Corp. Secs. Litig.,*
    228 F.Supp.2d 1061 (E.D.Mo.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.

*In re Bolar Pharmaceutical Co. Sec. Litig.,*
    966 F.2d 731 (2d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

*In re Charter Commc'ns, Inc. Secs. Litig.,*
    2005 WL 404574 (E.D. Mo. June 30, 2005) . . . . . . . . . . . . . . . . . . . . . . 15.

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20.

*In re CV Therapeutics, Inc., Sec. Litig.*,
    2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) . . . . . . . . . . . . . . . . . . . . . 17.

*In re Datatec Systems, Inc. Sec. Litig.*,
    2007 WL 4225828 (D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.

*In re Equity Funding Corp. of Am. Secs. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15.

*In re FPI/Agretech Securities Litigation*,
    105 F.3d 469 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.

*In re LifeScan, Inc. Consumer Litig.*,
    Case No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) . . . . . . . . . . . . . . . 17.

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 14.

*In re Immune Response Sec. Litig.*,
    2007 WL 2071566 (S.D. Cal. May 31, 2007) . . . . . . . . . . . . . . 19., 20., 21.

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
    842 F. Supp. 733 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21.

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17.

*In re Omnivision Technologies, Inc.*
    2008 WL 123936 (N.D.Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14.

*In re Sybase Inc. Sec. Litig.*,
    Master File No. C-98-0252-CAL (N.D. Cal. Sept. 29, 2000) . . . . . . . . . . 17.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 3., 4., 5., 11., 18.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

*J.I. Chase Co. vs. Borak*,
    377 U.S. 426 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.

*J.N. Futia Co. vs. Phelps Dodge Indus., Inc.*,
    1982 WL 1892 (S.D.N.Y. Sept. 17, 1982) . . . . . . . . . . . . . . . . . . . . . . . . 15.

*Kerr vs. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9., 16.

*Mills vs. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.

*MiltlandRaleigh-Durham vs. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19.

*Paul, Johnson, Alston & Hunt vs. Graulty*,
    886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4., 6.

*Six (6) Mexican Workers vs. Arizona Citrus Growers*,
    904 F.2d 1301, 1312 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . 5., 17.

*Tellabs vs. Makor Issues & Rights, Ltd.*,
    172 S.Ct. 2499 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.

*Thornberry vs. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982),
    *vacated on other grounds*, 461 U.S. 952 (1983) . . . . . . . . . . . . . . . . . . . . 20.

*Van Vranken vs. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.

*Vincent vs. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.

*Welch vs. Metropolitan Life Ins. Co.*,
    480 F.3d 942, 946  (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.

*Winkler vs. NRD Mining, Ltd.*,
    198 F.R.D. 355 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.

*Treatises, Studies, Etc.*

Denise N. Martin, Vinitam M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV.- What Explains Filings and Settlements in Shareholder Class Actions?*, at 12-13 (NERA Nov. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17.

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996) . . . . . . . . . . . . 17.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

Lead Plaintiffs ("Plaintiffs" or "Lead Plaintiffs"), through their undersigned counsel, Catanzarite Law Corporation ("Plaintiff's Counsel" or "Lead Counsel") submits this memorandum of points and authorities in support of their Motion, pursuant to Federal Rule of Civil Procedure 23(e), for an Order: (1) awarding attorneys' fees of $1.9 million; and (2) reimbursement of $375,000 in expenses that were incurred in prosecuting this Action and two related actions (the "Fee Petition").

I.

PRELIMINARY STATEMENT

Plaintiffs' Counsel has obtained a Settlement of $4,500,000 in cash plus interest for the Class. The Settlement recovers a substantial portion (39%) of estimated class-wide damages ($11.5 million) and is an excellent result, particularly when viewed in light of the considerable risks posed by continued litigation and the uncertainty of attempting to prove liability at trial. *See* Declaration of Laurence M. Rosen in Support of Settlement and Plan of Allocation and Award of Attorneys' Fees and Expenses ("Rosen Decl."), ¶¶ 54-66. This $4,500,000 recovery is largely attributable to Plaintiffs' Counsel's litigation efforts and was achieved only after four and half years of extensive litigation, including over 30 depositions, 3 motions to dismiss, 4 summary judgment motions, a successful appeal, three failed mediation sessions, and a fourth successful mediation consisting of intensive arm's-length negotiations with a nationally regarded mediator and former Judge, Daniel Weinstein. *See Id.*, ¶¶ 5, 21-52.

As compensation for these efforts, Plaintiffs' Counsel respectfully request that the Court award them legal fees of $1.9 million and reimbursement of out-of-pocket expenses of $375,000, plus interest. *See Id.*, ¶¶14-18. The requested fee is substantially less than Plaintiffs' counsels' lodestar of $3,688,588.50 which represents the market value of legal services Plaintiffs' counsel provided to the

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

Class. The requested fee amounts to 42% of the total recovery.  While it is higher on a percentage basis than the typical fee award, because the Public Offering Class Members who have filed claims are receiving 43% of their losses *after* payment of the requested legal fees, and when cross-checked against Plaintiff Counsel's lodestar evinces a negative multiplier of 0.52, it is on its face reasonable and fair. *See Id.*, ¶¶ 90-96.  Since Class Members are receiving an unusually high percentage of recoverable losses and the amount of Settlement funds available to Class Members is not diminished by payment of the requested $1.9 million fee award, the Court should approve the requested fee as fair and reasonable.

The reaction of the Class also strongly supports the requested fee.  The deadline to object to the Fee Petition has come and passed, and no Class Member has come forward to object. Nor has any Class Member requested exclusion. [1] Pursuant to the Court's Notice Order dated November 29, 2007, and the Order Partially Amending Order of Preliminary Approval of Settlement dated March 27, 2008, more than 5,400 Notices were mailed to Class Members. *See* Affidavit of Paul Mullholland ("Mullholland Aff.") ¶¶ 4, 14, 18.  The Notice and Summary Notice advised Class Members that Plaintiffs' Counsel intended to apply to the Court for an award of attorneys' fees of $1.9 million from the Gross Settlement Fund and that Plaintiffs' Counsel would seek reimbursement of their out-of-pocket expenses not to exceed $375,000.  *See* Rosen Decl., ¶¶ 81-87.

For the reasons set forth more fully below, Plaintiffs' Counsel respectfully submit that such Attorneys' Fees and Expenses are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken, the considerable amount of time and effort expended by Plaintiffs' Counsel in their

---

[1] Two purchasers of Entropin stock on the open market (after the Public Offering) have requested exclusion, but these persons are not Class Members, so their requests for exclusion have no bearing on the motion. *See* Rosen  Decl. ¶ 26, Mullholland Aff. ¶ 18.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

prosecution of the case, and the quality of the recovery obtained, and should be awarded by the Court.

II.

APPLICABLE LEGAL STANDARD

GOVERNING AWARD OF ATTORNEYS' FEES [2]

A. *An Award of Legal Fees Is Proper in Common Fund Cases.*

It has long been recognized that a person who maintains suit that results in the creation of a benefit in which others have a common interest may obtain fees from that common benefit. *See Boeing vs. VanGemert,* 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Alyeska Pipeline Serv. Co. vs. Wilderness Soc'y,* 421 U.S. 240, 275 (1975); *Mills vs. Electric Auto-Lite Co.,* 396 U.S. 375, 392-93 (1970).  The Ninth Circuit is no exception to this standard.

It has also long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the cost of his litigation, including attorneys' fees." *Vincent vs. Hughes Air W., Inc.,* 557 F.2d 759, 769  (9th Cir. 1977).  This doctrine avoids unjust enrichment on the principle that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").

Courts have also recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled

---

[2] For the sake of brevity, Lead Plaintiffs refer the Court to the separate Rosen Decl., and Memorandum of Law in Support of Final Approval of the Settlement concurrently filed herewith, for a full description of the facts and procedural history of this Action.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

counsel to represent those who seek redress for damages inflicted on entire classes
of persons, and to discourage future misconduct of a similar nature.  *See e.g.*
*Doglow vs. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).  To that end, the
Supreme Court has emphasized and recently reaffirmed that private securities
actions, such as this Action, provide a "most effective weapon in the enforcement"
of the securities laws and are "a necessary supplement to [SEC] action."  *Bateman*
*Eichler, Hill Richards, Inc. vs. Brenner*, 472 U.S. 299, 310 (1985) (*quoting J.I.*
*Chase Co. vs. Borak*, 377 U.S. 426, 432 (1964)); *see also Tellabs vs. Makor Issues*
*& Rights, Ltd.,* 172 S.Ct. 2499, 2504 (2007).

The Ninth Circuit explains the principle underlying fee awards in common
fund cases in *Paul, Johnson, Alston & Hunt vs. Graulty*, 886 F.2d 268, 271 (9th
Cir. 1989): "Since the Supreme Court's 1885 decision in *Central Railroad &*
*Banking Co. of Ga. vs. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885), it
is well settled that the lawyer who creates a common fund is allowed an extra
reward, beyond that which he has arranged with his client, so that he might share
the wealth of those upon whom he has conferred a benefit."  The amount of such a
reward is that which is deemed `reasonable' under the circumstances.

In a class action, the district court has broad authority over an award of
attorneys' fees; including the discretion to determine attorneys' fees by either the
lodestar/multiplier method or the percentage-of-the-fund method – both are equally
permissible methods for awarding attorneys fees in class action. *In re FPI/Agretech*
*Securities Litigation*  105 F.3d 469, 472 (9th Cir. 1997); *WPPSS* 19 F.3d at 1295.
Despite the trend towards a percentage-of-the-fund approach in common fund
cases, the lodestar method remains an equally valid approach.

The Ninth Circuit, citing several of its prior decisions, made clear that the
lodestar method continues as a viable method for calculating attorneys' fees.
"[W]e restate the law of our circuit that, in common fund cases, no presumption in
favor of either the percentage or the lodestar method encumbers the district court's

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1    discretion to choose one or the other." *WPPSS,* 19 F.3d at 1296 (*Citing, Florida*

2    *vs. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt vs.*

3    *Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The touchstone is that the fee award

4    must be "reasonable under the circumstances." *WPPSS,* 19 F.3d 1296; *Florida vs.*

5    *Dunne,* 915 F.2d at 545.

6       The court should choose the lodestar method because it achieves the most just

7    result under the circumstances of this particular case. "The lodestar method, rooted

8    in market-based hourly billing rates, is a more objective measure of compensation."

9    *In re AOL Time Warner, Inc. Sec. Lit.,* 2006 WL 3057232 *9 (S.D.N.Y. 2006)

10   (*Citing, City of Detroit vs. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir.1974)

11   (only the lodestar method can "claim objectivity"); *In re Bolar Pharmaceutical Co.*

12   *Sec. Litig.*, 966 F.2d 731, 732 (2d Cir.1992) (fee computed under lodestar method

13   is "strongly presumed to be reasonable"). "Lodestar calculations may be required

14   under circumstances in which a percentage recovery would be either too small or

15   too large in light of the hours devoted to the case." *Six (6) Mexican Workers vs.*

16   *Arizona Citrus Growers,* 904 F.2d 1301, 1312 (9th Cir.1990) (Sneed, J. specially

17   concurring).

18       Typically this concept is employed to reduce percentage awards where 25% of

19   an unusually large recovery will result in an unjustifiable wind-fall for the

20   attorneys relative to the time and effort expended, but it applies equally when, as

21   here, the percentage method results in an unfairly small legal fee relative to the

22   value of legal services performed for the Class. Especially where, as here, counsel

23   has obtained an excellent result for Class Members.

24      B. *The Requested Fee Is Reasonable Under the Lodestar Method of Awarding*

25   *Attorneys' Fees in Common Fund Cases*.

26       Plaintiffs' Counsel, for their efforts in creating the Settlement Fund on behalf

27   of the Class, request a collective fee award on a lodestar basis to be paid from the

28   fund created. Under the lodestar method, the court first multiplies the number of

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1   hours an attorney reasonably spent on the case by a reasonable hourly rate (market
2   rate charged by attorneys of similar skill and experience); that figure is then
3   enhanced to account for risk of non-payment, delay in payment and other
4   circumstances of the case, to reach a reasonable fee. *Paul, Johnson, Alston & Hunt*
5   *vs. Graulty*, 886 F.2d 268, 272 (9th Cir.1989).

6        The requested fee here is certainly fair and reasonable when considered from a
7   lodestar approach.  Under the lodestar method, the court first multiplies the number
8   of hours an attorney reasonably spent on the case by a reasonable hourly rate; that
9   figure is then adjusted according to the circumstances of the case to reach a
10  reasonable fee. *Paul, Johnson, Alston & Hunt vs. Graulty*, 886 F.2d 268, 272 (9th
11  Cir.1989).  Billing rates "should be established by reference to the fees that private
12  attorneys of an ability and reputation comparable to that of prevailing counsel
13  charge their paying clients for legal work of similar complexity." *Welch vs.*
14  *Metropolitan Life Ins. Co.*, 480 F.3d 942, 946  (9th Cir. 2007), *quoting, Davis vs.*
15  *City and County of San Francisco,*  976 F.2d 1536, 15545 (9th Cir. 1992).  The
16  hourly rates utilized in the lodestar analysis are within the range of $150-$225 for
17  paralegals and law students, $275-$425 for associate attorneys and $450-$550 for
18  partners.  *See*, Appendix of Counsels' Lodestar Declarations in Support of Award
19  of Attorneys' Fees.

20       These hourly rate are within the range of experienced securities litigation
21  attorneys and paralegals in major metropolitan areas like Los Angeles and New
22  York.  *See, In re Datatec Systems, Inc. Sec. Litig.,* 2007 WL 4225828 *9 (D.N.J.
23  2007) (" The hourly rates used by Lead Plaintiffs' counsel range from $130.00 for
24  the least expensive paralegal to $675.00 for the most expensive partner. The
25  blended hourly rate for all individuals working for Lead Plaintiffs' counsel is
26  approximately $397.63. In light of the lack of objections to this rate and the
27  experience of Lead Plaintiffs' counsel, the Court will consider these rates
28  reasonable"), *accord, In re Bankamerica Corp. Secs. Litig.,* 228 F.Supp.2d 1061,

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1065 (E.D.Mo.2002) ( "IWJhile the hourly rates ranging up to $695 are high for the Eastern District of Missouri, they are nonetheless within the range of reasonableness in the realm of nationwide securities class actions.").

Plaintiffs' counsel expended 8,060.3 hours of professional time on the class actions. *See.* Rosen Decl. ¶ 14.  If the Court were to grant the requested $1.9 million fee, counsels' blended hourly rate will be $236 per hour.  A reasonable hourly rate.   Typically, to compensate counsel for the contingent nature of the fee and lengthy delay in payment, courts increase the lodestar amount by a multiplier, usually one to four times. *See Vizcaino*, 290 F.3d at 1048-50 (affirming award of $97,000,000 settlement fund, equating with multiplier of 3.65); *See also Van Vranken vs. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (*citing* cases, multipliers of 3-4 "common" in common-fund actions).

Plaintiff's Counsel spent a total of 8,060.3 hours on this case, for a total lodestar of  $3,688,588.50 *See* Rosen Decl. ¶¶ 14-15. Here, counsel does not seek any multiplier.  In fact, the requested fee is only one-half (52%) of counsel's lodestar – conclusively demonstrating reasonableness.  *See, Fischel vs. Equitable Life Assur. Society of U.S.*  307 F.3d 997, 1007 (9th Cir. 2002) ("There is a "strong presumption" that the lodestar figure represents a reasonable fee.").

The following chart summarizes the hours worked and lodestars for each of the four law firms providing services in the class actions:[3]

| Law Firm | Nbr. of Hours | Blended Rate [4] | Lodestar |
|---|---|---|---|
| Catanzarite | 2,236.0 | $ 454 | $ 1,015,000.00 |
| Rosen | 5,210.7 | 466 | 2,429,266.00 |

[3]  *See* Appendix of Counsel's Lodestar Declarations, filed herewith.

[4] The Blended Rate is the average hourly rate of all attorneys and paralegals who worked on this matter. For specific hourly rates of each professional and para-professional, please see the Appendix of Counsels' Lodestar Declarations submitted with the motion for attorney's fees and expenses.

| | | | |
|---|---|---|---|
| Zimmerman | 363.3 | 450 | 163,485.00 |
| Richardson | 250.4 | 323 | 80,837.50 |
| Total | 8,060.4 | $ 458 | $ 3,688,588.50 |

The collective fee request is on behalf of the four law firms that together preformed substantial legal work to achieve this global Settlement resolving claims in three different class actions, two of which were extensively litigated.  Following summary judgment for defendants in the State Action, plaintiffs successfully appealed and the judgment was reversed.  The State Action was actively litigated since January 2003, and this Federal Action in the Central District was actively litigated since July 2004.  Counsel defeated three motions to dismiss, four summary judgment motions, deposed well over thirty witnesses, obtained class certification in two separate courts and prepared in limine motions and trial briefs before the cases were finally resolved on the eve of trial.  *See*, Rosen Decl. ¶ 5, 21-52. It is worth noting that defendants paid their attorneys over $5.5 million in legal fees and expenses to defend these class actions, lending credence to Plaintiff Counsels' $3.7 million lodestar. Rosen Decl. ¶¶9, 69.

Under the lodestar approach, the requested fee of $1.9 million represents only 52% of the value of the legal services provided to Class Members. Indeed, Judge Weinstein strongly recommends the Settlement and $1.9 million attorney fee award based on the high percentage recovery of losses obtained for Class Members and the significant amount of work performed by Class Counsel over the course of the litigation. *See,* Weinstein Decl. ¶18.  When viewed in this light, the requested fee is atypically low and remarkably reasonable.

III.

CONSIDERATION OF RELEVANT FACTORS

JUSTIFIES APPROVAL OF THE  FEES REQUESTED

The guiding principle in this Circuit is that a fee award be "reasonable under

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1  the circumstances." *WPPSS*, 19 F.3d at 1295 n.2 (*citation and emphasis omitted*).

2  The Ninth Circuit has adopted a set of factors for the trial court to consider when

3  determining an award of legal fees in a common fund case.[5]  Plaintiffs' Counsel

4  submit that, as the factors discussed below demonstrate, an attorneys' fee award of

5  $1.9 million is quite reasonable under the circumstances of this case, given the

6  quality of result obtained, the risks and financial commitment of Plaintiff's

7  Counsel, and the extraordinary amount of time and effort invested.

8  　　A.  *The Result Achieved.*

9  　　Courts have consistently recognized that the result achieved is an important

10  factor to be considered in making a fee award. *Hensley vs. Eckerhart*, 461 U.S.

11  424, 436 (1983) (most critical factor is the degree of success obtained ); *Vizcaino*,

12  290 F.3d at 1048, 1050 (finding district court properly considered the results

13  obtained by counsel in awarding fee).

14  　　Through the efforts of Plaintiff's Counsel, Defendants have provided a

15  Settlement Fund of $4.5 million in cash offering the Class an immediate recovery

16  without the risk of trial.  In view of the factual and legal obstacles to a potential

17  recovery in this case (*See* Rosen Decl., ¶¶ 54-66), the Settlement achieved is an

18  excellent result for the Class.  This settlement provides a recovery of 39% of

19  Plaintiffs' Counsel's estimate of the maximum recoverable damages based upon the

20  analysis performed by Plaintiffs' damages expert. *See Id.*, ¶ 10.  Defendants hotly

21

22  _____

23  　[5] "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr vs. Screen Extras Guild, Inc.* 526 F.2d 67, 70 (9th Cir. 1975).

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1  contested damages and loss causation, and there was the very real possibility that at

2  trial the jury will find that Defendants' much smaller estimate of damages is more

3  appropriate than Plaintiff's larger estimate.

4       While the recovery of 39% of plaintiffs' *estimated* damages is an excellent

5  result, the Court should also note that the *actual* recovery for each Class Member is

6  an extraordinary proportion of plaintiffs' losses. The Settlement stipulated that

7  each Public Offering Class Member would receive approximately 25% of

8  recognized losses, *after* payment of legal fees and expenses.  Rosen Decl. ¶ 12.

9  Because fewer than anticipated Public Offering purchasers filed claims in the

10  Settlement, those Public Offering Class Members that did submit claims will

11  receive checks for approximately 43% of their recognized losses – after payment of

12  legal fees and expenses.[6/] Rosen Decl. ¶ 11.  Private placement and warrant

13  purchasers will receive checks for approximately 21% of their recognized losses,

14  after payment of legal fees and expenses; also an excellent result for these class

15  members.[7/] Rosen Decl. ¶11-12.   This is an extraordinary recovery as the median

16  recovery in securities class actions is less than 5% of damages. Rosen Decl. ¶12.

17       Further magnifying the quality of this result is the fact that Entropin has very

18  limited financial means at this juncture.  The Company terminated its operations in

19  2005 and aside from $9.5 million of D & O insurance remaining, has no other

20  means with which to satisfy a greater judgment.  The Company's stock trades at a

21  fraction of a penny per share and remains de-listed from the NASDAQ. *See* Rosen

22  Decl., ¶ 67-71.  It has a market capitalization of $186,000, and is effectively

23  _____

24     6/  Total recognized losses of Public Offering claimants are $2,125,293.

25  Mulholland Decl. ¶ 19. These claimants are receiving $900,000 in the aggregate
   which represents 42% of their recognized losses.

26

27     7/  Total recognized losses for private placement and warrant claimants are
   $1,093,435.   These claimants are receiving $225,000 in the aggregate which

28  represents 21% of their recognized losses. Mulholland Decl. ¶ 19.

1  deceased as a business entity.  *See* Rosen Decl. ¶ 8, 67-68.  The Company's only

2  //

3  real asset is its ever-dwindling D&O insurance policy, which will fund the

4  Settlement.

5      Accordingly, the results achieved, along with the additional considerations set

6  forth below, support approval of the requested fee—especially here, where

7  Plaintiffs' Counsel has achieved a  significant and exceptionally hard-fought

8  recovery.  Plaintiffs'  Counsel should be justly rewarded for their work. *See, EVCI*

9  *Career Colleges Holding Corp. Secs. Litig.*, 2007 WL 2230177 * 17 (S.D.N.Y. Jul.

10  17, 2007) ("Lead Counsel's approach resulted in an outstanding recovery for the

11  Class now, rather than obtaining the same, or a lesser, or perhaps no recovery after

12  incurring substantial amounts of time and resources and jeopardizing EVCI's

13  survival. Given the Company's limited financial wherewithal and the wasting

14  nature of its insurance policies, Lead Counsel maximized the Class's recovery.").

15      B.  *The Contingent Nature of the Fee and the Financial Burden Carried by*

16  *Plaintiff's Counsel.*

17      A determination of a fair fee must include consideration of the contingent

18  nature of the fee.  As the Ninth Circuit explained in *WPPSS*, 19 F.3d at 1299:

19          It is an established practice in the private legal market to reward

20          attorneys for taking the risk of non-payment by paying them a

21          premium over their normal hourly rates for winning contingency

22          cases. See Richard Posner, Economic Analysis Of Law § 21.9 at

23          534-35 (3d ed. 1986). Contingent fees that may far exceed the

24          market value of the services if rendered on a non-contingent basis

25          are accepted in the legal profession as a legitimate way of

26          assuring competent representation for plaintiffs who could not

27          afford to pay on an hourly basis regardless whether they win or

28          lose.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1   The risk of obtaining no recovery in complex securities cases of this type is

2   very real.  Before counsel commit to prosecute a securities class action on a

3   contingent fee basis, an assessment of the strength of the case, the likelihood of

4   recovery, the probable size of damages and the cost of litigation is weighed against

5   the expectation of payment if successful. There are numerous class actions in

6   which counsel took the risk, expended thousands of hours, and yet received no

7   remuneration whatsoever despite their diligence and expertise.  *See* Rosen Decl., ¶¶

8   97-98.

9   Furthermore, in the aftermath of the passage of the PSLRA, a significant

10  percentage of cases in this Circuit have been dismissed at the pleading stage in

11  response to Defendants' arguments that the complaints do not meet the PSLRA's

12  pleading standards. Courts have noted that "securities actions have become more

13  difficult from a plaintiff's perspective in the wake of the  PSLRA."  *In re Ikon*

14  *Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (*citation*

15  *omitted*); *see also Goldstein vs. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003)

16  (affirming dismissal with prejudice of securities fraud class action complaint

17  against Bernard Ebbers and WorldCom arising out of a massive securities fraud

18  that resulted in a $685 million write-off of accounts receivable, and which later

19  resulted in Ebbers's conviction on criminal charges).

20  Undertaking contingent litigation for the benefit of a class is always a risk. *See*

21  *e.g. AUSA Life Ins. Co. vs. Ernst & Young*, 39 Fed. Appx. 667 (2d Cir. 2002)

22  (affirming district court's dismissal of action after a full bench trial and earlier

23  appeal and remand); *Winkler vs. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.

24  2000) (granting defendants ' motion for judgment as a matter of law after jury

25  verdict for plaintiffs), *aff'd sub nom. Winkler vs. Wigley*, 242 F. 3d 369 (2d Cir.

26  2000). Plaintiffs' Counsel's receipt of any fee award has always been at risk and

27  completely contingent upon the quality of the result achieved and this Court's

28  discretion in issuing such an fee award.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1    The risk inherent in bringing a securities class action, and, particularly, in

2    bringing a securities class action in the post-PSLRA era, is not merely an abstract

3    concept.  Indeed, the risks faced by Plaintiffs' Counsel here were quite tangible and

4    substantial.  As set forth more fully in the Rosen Declaration, Plaintiffs faced

5    numerous substantial risks in attempting to prove that the results of Entropin's

6    phase II clinical trials were adverse and that Defendants' representations of those

7    data were materially false and misleading.  *See* Rosen Decl. ¶ 57.  Moreover,

8    Plaintiffs faced the daunting task of convincing a lay jury that Defendants'

9    misrepresentations of those clinical data were issued with scienter.  *See* Rosen

10   Decl., ¶ 58-59.

11   Compounding these risks was the real risk that the Company's only real source

12   of funds—its D&O insurance policy would disclaim coverage.  *See Id.*, ¶¶ 69-71.

13   Indeed, the insurers made clear at the mediation that they would disclaim coverage

14   if Plaintiffs prevailed at trial, leaving Plaintiffs with yet another lawsuit to file and

15   win before a recovery was obtained. Rosen Decl. ¶69-71. Because the Complaint

16   asserts intentional conduct, there was a real and imminent risk that the Company's

17   insurer would be successful in disclaiming coverage—leaving the Class with no

18   real prospect of collecting on any higher judgment. *See Id.*, ¶¶ 70-71.   This created

19   a paradox for Plaintiff's Counsel, as Plaintiff's more convincingly proved

20   defendants acted with fraud, the likelihood of the insurance carriers successfully

21   disclaiming became more real.  *See Id.*, ¶ 71.  This would have left Plaintiff with

22   little or no recourse to satisfy a greater judgment.  *See Id.*, ¶ 71.   In fact,

23   defendants' insurer relied heavily on its coverage defenses in negotiating this

24   Settlement.  Declaration of Hon. Daniel Weinstein (Ret.) ¶10 ("Weinstein Decl.")

25   submitted herewith.

26   Lastly, Plaintiff faced the risks inherent in attempting to prove damages and

27   loss causation.  In addition to the risk associated with a "battle of the experts" such

28   as would inevitably transpire at trial, serious questions exist as to whether

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1  Defendants' alleged deliberate misrepresentations of the phase II clinical trial

2  results were the proximate cause of the injury suffered by Class Members. *See Id.*,

3  ¶60-62.  Plaintiffs' failure either to prove loss causation or to establish the full

4  extent of their estimate of damages could have resulted in the immense reduction or

5  outright elimination of the Class's recovery .  *See Id.*, ¶ 60-66.

6      There is no question that from the outset, this case presented sharply contested

7  and unsettled issues of both fact and law. In the face of these very real risks,

8  Plaintiffs' Counsel litigated the Class's claims tirelessly over a period of more than

9  five years, appearing before four courts in three states. With no assurance of even

10  the slightest remuneration, Plaintiffs' Counsel litigated seven dispositive motions,

11  successfully argued an appeal before the Court of Appeals of the State of

12  California, and participated in four mediation sessions before obtaining the

13  proposed Settlement. Undeniably, Plaintiffs' Counsel achieved a result more than

14  sufficient to support approval of the fees requested.

15      C. *The Skill Required and the Quality of the Work.*

16      Plaintiffs were able to obtain this recovery on behalf of the Class as a result of

17  the participation of highly skilled and specialized attorneys practicing in the areas

18  of securities regulations and class actions.  *Heritage Bond*, 2005 WL 1594389 at

19  *12 (C.D. Cal. 2005)  ("The experience of counsel is also a factor in determining

20  the appropriate fee award.").

21      The "prosecution and management of a complex national class

22      action requires unique legal skills and abilities." *Edmonds vs.*

23      *United States,* 658 F.Supp. 1126, 1137 (D.S.C.1987). This is

24      particularly true in securities cases because the Private Securities

25      Litigation Reform Act makes it much more difficult for securities

26      plaintiffs to get past a motion to dismiss. *See, e.g., In re Ikon*

27      *Office Solutions, Inc.,* 194 F.R.D. 166, 181, 194 (E.D.Pa.2000).

28  *In re Omnivision Technologies, Inc.* 2008 WL 123936, *9 (N.D.Cal. 2008).

//

//

Plaintiffs counsel has substantial experience in the prosecution of complex litigation and securities class actions.[8] Plaintiffs' Counsel utilized the full panoply of their skill and expertise in this action in order to obtain compensation for the members of the Class. Since the filing of the initial complaint on January 28, 2003, Plaintiffs' Counsel have drawn upon the full depth and breadth of their experience to draft three separate amended complaints, to interview numerous witnesses and conduct over 30 depositions,[9] to review more than 60,000 pages of documents produced, to defeat three motions to dismiss and four motions for summary judgment, to obtain class certification in two courts, to argue a successful appeal in the California State action, prepare and file in limine motions and to participate in four mediations. *See* Rosen Decl., ¶¶ 5, 21-52. The quality of this work and skill exhibited by Plaintiff's Counsel in obtaining an exceptional Settlement after more than five years of litigation supports the award of the fee requested. *See e.g. J.N. Futia Co. vs. Phelps Dodge Indus., Inc.*, 1982 WL 1892 (S.D.N.Y. Sept. 17, 1982).

The expertise and ability of opposing counsel is another factor that courts weigh in assessing the quality of the work performed by Plaintiffs' Counsel. *See e.g. In re Equity Funding Corp. of Am. Secs. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Charter Commc'ns, Inc. Secs. Litig.*, 2005 WL 404574, at *6 (E.D. Mo. June 30, 2005); *Arenson vs. Bd. of Trade*, 372 F. Supp. 1349, 1354

---

8/ A description of each law firm's experience in complex litigation and securities class actions is attached as an exhibit to each law firms Lodestar Declaration in the Appendix of Counsels' Lodestar Declarations file herewith.

9/ Counsel conducted depositions in California, Nevada, New York, New Jersey, Connecticut, Pennsylvania, Florida, Georgia, South Carolina, North Carolina, Ohio, Colorado, Washington, Missouri and Illinois. Rosen Decl. ¶42.

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1  (N.D. Ill. 1974).  Defendants' counsel, Pircher, Nichols & Meeks and Heller

2  Ehrman, LLP, are nationally recognized with an abundance of experience in

3  complex class action litigation, as is Wiley Rein, LLP, counsel for XL Specialty

4  Insurance Co.  These firms presented formidable opposition to Plaintiffs' Counsel

5  and spared no effort in representing their clients.  Thus, the quality of and vigorous

6  representation provided by opposing counsel are factors indicative of the high

7  quality of work performed by Plaintiffs' Counsel and the degree of skill required to

8  prosecute this action successfully.

9                                               IV.

10                     THE LENGTHY DELAY IN PAYMENT

11                 JUSTIFIES THE REQUESTED FEE AWARD

12        Plaintiffs' Counsel have received no compensation for their efforts during the

13  five and half years they have litigated this Action and the California State Action

14  and have expended very substantial time and expenses for the benefit of the Class.

15  They have expended 8,060.3 hours, representing a lodestar of  $3,688,588.50 in

16  professional time, in obtaining this result for the Class, all the while knowing that

17  if their efforts were not successful, no fee would be generated and their expenses

18  would not be reimbursed. *See* Rosen Decl., ¶ 14.  In actively litigating this Action

19  and the State Action Plaintiffs counsel by necessity forewent the opportunity to

20  take on other fee paying clients. Rosen Decl. ¶ 102.  This dedication to the Class

21  should be recognized in determining an award of legal fees.  *Kerr vs. Screen Extras*

22  *Guild, Inc*.  526 F.2d at 70.

23                                               V.

24               THE REQUESTED FEE IS REASONABLE

25       EVEN THOUGH IT IS A HIGHER THAN AVERAGE

26                  PERCENTAGE OF THE RECOVERY

27        Given that this Settlement resolves three different class actions and

28  compensates several law firms for an enormous amount of work done in each, the

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1 | lodestar method is more appropriate than the percentage method. The benchmark

2 | percentage legal fee in the Ninth Circuit is 25%, though district courts in the Ninth

3 | //

4

5 | Circuit routinely award fees in the range of 30% to 33%.[10/]  *See*, *In re Mego Fin.*

6 | *Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of

7 | $1.725 million settlement); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL

8 | 1033478, at *2 (N.D. Cal. Apr. 4, 2007) (fee equal to 30% of recovery, plus

9 | expenses); *In re Adac Labs. Secs. Litig.*, Master File No. C-98-4934-MHP (N.D.

10 | Cal. Sept. 18, 2000 (fee equal to 30% of recovery, plus expenses);  *In re LifeScan,*

11 | *Inc. Consumer Litig.,* Case No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) (33% fee

12 | awarded plus expenses);  *In re Sybase Inc. Sec. Litig.*, Master File No. C-98-0252-

13 | CAL (N.D. Cal. Sept. 29, 2000) (fee equal to 30% of recovery, plus expenses),

14 | attached as Ex. 3 to Rosen Decl.

15 | The requested $1.9 million is 42% of the $4.5 million Settlement Fund, which

16 | is a greater percentage than is ordinarily awarded under the percentage method.[11/]

17 | "The benchmark percentage should be adjusted, or replaced by a lodestar

18 | calculation, when special circumstances indicate that the percentage recovery

19 | would be either too small or too large in light of the hours devoted to the case or

20

21 | 10/ An analysis of fee awards in class actions conducted in 1996 by National

22 | Economic Research Associates, an economics consulting firm, using data from

23 | 433 shareholder class actions, concludes: "Regardless of case size, fees averaged approximately 32 percent of the settlement."  See Denise N. Martin, Vinitam M.

24 | Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV.- What Explains*

25 | *Filings and Settlements in Shareholder Class Actions?*, at 12-13 (NERA Nov. 1996), excerpted due to size and attached as Ex. 1 to Rosen Decl.

26

27 | 11/  This percentage is calculated as the $1.9 million fee request divided by

28 | the $4.5 million paid by XL Specialty into the escrow fund for the benefit of Class Members.  Rosen Decl. ¶ 14. ; Stipulation of Settlement, pp. 14, 15.

1   other relevant factors." *Six (6) Mexican Workers,* 904 F.2d at 1311.  A Federal

2   Judicial Center Study found that securities class action fee awards mostly fell in the

3   range of 20% to 40%. *See* Thomas E. Willging, Laural L. Hooper & Robert J.

4   Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final*

5   *Report to the Advisory Committee on Civil Rules,* at 69 (Federal Judicial Center

6   1996), excerpted due to size and attached as Ex. 2 to Rosen Decl.

7       Under the terms of the Settlement Stipulation, because the aggregate

8   recognized losses of claims submitted by Public Offering Class Members is less

9   than $3.6 million, $1.0 million of the $4.5 million Settlement Fund will revert to

10  XL Specialty Insurance. Rosen Decl. ¶ 95; *see also* Stipulation of Settlement.

11  That a portion of the Settlement Fund is not claimed by, nor distributed to, Class

12  Members does not diminish the substantial benefit Class Counsel has provided to

13  the Class.

14      Nor does it lessen the obligation of Class Members to pay or Class Counsel to

15  receive a reasonable legal fee based on the creation of the entire Settlement Fund.

16  To the extent the Court awards Class Counsel less than the requested $1.9 million

17  fee, that difference will revert to XL Specialty Insurance; it will not benefit Class

18  Members by resulting in an extra payment. The Supreme Court ruled in similar

19  instance that even though a portion of the settlement fund reverted to defendants

20  because class members failed to claim their share, because class members had an

21  equitable right to claim a share of the  entire recovery, their failure to exercise that

22  right did not affect class counsel's entitlement to claim a fee award based on the

23  entire fund, regardless of any amounts ultimately reverting to defendants. The

24  Supreme Court ruled that Class Counsel was entitled to an award of attorneys fees

25  based on the entire settlement fund created, even though a substantial portion

26  reverted to defendants as a result of a failure of all class members to file claims.

27  *See, Boeing Co. vs. Van Gemert*  444 U.S. 472, 479, 100 S.Ct. 745, 749 - 750

28  (1980).

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1  Here, the benchmark percentage award would result in paying counsel only

2  30% of its $3.7 million lodestar, rather than the typical 1-4 times lodestar multiple.

3  Such a percentage award produces an unjust result in this case.  The Ninth Circuit

4  in *WPPSS* found the trial court erred in failing to enhance the award of legal fees

5  by a reasonable multiple of counsel's lodestar. *WPPSS* at 1302.  Here, counsel is

6  merely asking for half (52%) of its lodestar- not a multiple.  Thus, the requested fee

7  of $1.9 million or 42% of the Class recovery is within the range of fees customarily

8  awarded in litigation of this nature.

9                                                      VI.

10              COUNSEL'S OUT-OF-POCKET EXPENSES ARE REASONABLE,

11        WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT,

12        AND THE REQUEST FOR REMIBURSEMENT  SHOULD BE APPROVED

13  Plaintiffs' Counsel have incurred expenses in the aggregate amount of

14  $405,855.56 in the prosecution of this action. The expenses incurred by each of the

15  participating counsel are set forth in the Appendix of Counsels' Lodestar

16  Declarations.  Because the Stipulation of Settlement limited payment of plaintiffs'

17  counsels' expenses in the class actions to $375,000, Counsel seek reimbursement

18  in an amount that is $30,855.56 less than the $405,855.56 they expended on behalf

19  of the Class.

20  It is appropriate to reimburse the expenses incurred by counsel on behalf of the

21  Class. Courts have noted that counsel for the Class are entitled to reimbursement

22  for those types of out-of-pocket expenses that an attorney would normally expect

23  the client to pay. *Harris vs. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may

24  recover as part of the award of attorney's fees those out-of-pocket expenses that

25  `would normally be charged to a fee paying client") (*citation omitted*); *see also In*

26  *re Immune Response Sec. Litig.*, 2007 WL 2071566, at *9 (S.D. Cal. May 31,

27  2007); *Bratcher vs. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th

28  Cir. 1993) (expenses reimbursable if they would normally be billed to a client);

CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

1  *Abrams vs. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same);

2  *MiltlandRaleigh-Durham vs. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)

3  ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred

4  //

5  and customarily charged to their clients, as long as they 'were incidental and

6  necessary to the representation' of those clients") (*citation omitted*).

7      The categories of expenses for which counsel seek reimbursement are the

8  types of expenses routinely charged to paying clients and, therefore, should be

9  reimbursed out of the common fund.  Among the significant items of expense

10  incurred by Plaintiffs' Counsel on behalf of the Class was the cost of retaining

11  experts in the areas of FDA regulation, drug development, and bio-statistics, as

12  well as financial experts needed to prosecute the action on behalf of the Class.

13  *Harris*, 24 F.3d at 19; *Immune*, 2007 WL 2071566, at *10. Other expenses include

14  the cost of computerized legal research using Westlaw, Lexis or Pacer.  It is

15  recognized that these are expenses that should be reimbursed. *See Id.*

16      The use of such computerized tools was necessary if the Class were to receive

17  representation on an equal footing with that provided to Defendants. Moreover,

18  courts recognize that such tools create efficiencies in litigation and, ultimately,

19  save clients and the Class money. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570

20  (7th Cir. 1992). In approving reimbursement of computerized research costs, the

21  court in *Gottlieb vs. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd &*

22  *remanded on other grounds sub nom. Gottlieb vs. Barry*, 43 F.3d 474 (10th Cir.

23  1994), noted that reimbursement of computerized research should be permitted in

24  order to encourage its time-saving potential and noted that fee-paying clients

25  typically reimburse counsel for such computerized legal and factual research .

26  Mediation costs should also be reimbursed. *Immune*, 2007 WL 2071566, at *10.

27      Other significant expenses involved travel, lodging, and related meals for

28  Court appearances, the mediation, meetings with Defendants' counsel and

1   Plaintiffs' experts.  Where possible, Plaintiffs' Counsel participated in these

2   matters by telephone, resulting in considerable savings of expense to the Class.

3   Travel and lodging expenses were necessary to the prosecution of the action, were

4   reasonable in amount and are properly charged against the fund created.

5   *Thornberry vs. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on*

6   *other grounds*, 461 U.S. 952 (1983); *Harris*, 24 F.3d at 19; *Immune*, 2007 WL

7   2071566 at *10; *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp.

8   733, 746 (S.D.N.Y. 1994); *Genden vs. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

9   741 F. Supp. 84, 86 (S.D.N.Y. 1990).

10      Similarly, photocopying and scanning costs associated with document

11   production and ECF filings and comparable costs are customarily reimbursed in

12   common fund cases. *See Harris*, 24 F.3d at 19; *Immune*, 2007 WL 2071566, at *10;

13   *McDonnell Douglas*, 842 F. Supp. at 746.

14 VII.

15 CONCLUSION

16      For all the reasons set forth above and in the accompanying declarations and

17   affidavit, Plaintiffs respectfully submit that the proposed award of Attorneys' Fees

18   should be approved and that the expenses reasonably incurred in the prosecution of

19   this Action should be reimbursed.

20   DATED: 5/8/08.

21

22   Jim Travis Tice

23   *for* Catanzarite Law Corporation
     *and on behalf of* The Rosen Law Firm., P.A.,

24   Lead and Liaison Counsel for Lead Plaintiffs and
     the Class

25

26

27

28

**CATANZARITE LAW CORPORATION**
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680